Irvin M. CARBALAN,
Plaintiff-Appellant,

v.

Bill VAUGHN, Individually and as Marshal of the City of Buffalo, Texas, et al., Defendants-Appellees.

No. 84–1558
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 20, 1985.

Rehearing Denied June 12, 1985.

Charles W. Nichols, Palestine, Tex., for plaintiff-appellant.

Haley & Davis, Herbert S. Bristow, W.C. Haley, Waco, Tex., for defendants-appellees.

1. The claims rested on 42 U.S.C. § 1983. Carbalan also sued the city marshal, claiming that he used excessive force in arresting him. The jury

Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Irvin M. Carbalan filed this civil rights suit against the city of Buffalo, Texas, and its Municipal Judge, Ben Bagley, complaining that Judge Bagley denied his constitutional right to reasonable bail when he refused to accept two motor club cards in lieu of cash bail.[1] Carbalan convinced a jury that Judge Bagley denied him his right to reasonable bail, but won no relief: before trial the district court, finding that Judge Bagley was immune, dismissed all claims against him and the jury found that Buffalo had no policy approving Judge Bagley's bail rulings. Carbalan asserts on appeal (1) that the court abused its discretion in refusing him leave, after trial had begun, to amend his pleadings to seek declaratory and injunctive relief against Judge Bagley, (2) that the court erroneously instructed the jury on Buffalo's potential municipal liability, and (3) that because the jury found a constitutional violation he is a "prevailing" party, entitled to attorneys' fees under 42 U.S.C. § 1988. We affirm because we are persuaded that the court was within its discretion in denying leave to amend the complaint, that the city could not have been liable for Judge Bagley's rulings regardless of the correctness of the jury instructions, and that Carbalan did not prevail.

I

On March 31, 1980, Carbalan was arrested for driving with an expired motor vehicle registration and for failure to appear previously on that charge. The arrests were authorized by warrants issued by Judge Bagley who set bail at a total of $407 for the two offenses, the maximum amount permitted by Texas law. Carbalan tendered two motor club cards with arrest bond endorsements. The parties agree,

found for the marshal and Carbalan does not here quarrel with that decision.

and we assume, that Texas law requires courts to accept such cards as equal to cash bail of up to $200 per card. According to Carbalan's uncontroverted testimony, when Judge Bagley said that he would not accept such cards under any circumstances, Carbalan telephoned his wife, who drove to the courthouse and wrote a personal check for $407, obtaining his release.

■ Carbalan's original and amended complaints sought only money damages against Judge Bagley and the city. The amended complaint and amended proposed pretrial order were filed the day before the trial began. Neither the pretrial order nor the amended complaint requested any declaratory or injunctive relief. After the jury had been selected, Carbalan sought leave to amend his complaint to seek declaratory and injunctive relief against Judge Bagley, which the court denied. Carbalan did so presumably because judges are not absolutely immune from suits seeking such relief. *Pulliam v. Allen,* — U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

Both sides agree that the evidence developed at trial showed that Buffalo exercised no control over Judge Bagley's conduct as a municipal judge, and that Judge Bagley had full responsibility for operating the municipal court. There was no evidence that any city official approved or was aware of Judge Bagley's "practice" of not accepting motor club cards. Indeed, the evidence of "practice" was the judge's statement that he would not take them under any circumstances. There was no other evidence that the issue was a recurring one.

The court submitted the issue of the city's liability to the jury, with instructions that Carbalan asserted that city officials allowed Judge Bagley's acts "to occur as a de facto policy of the city," and that the defendants "denied that any such de facto policy existed." The court did not define "de facto policy" or otherwise explain the elements of municipal liability under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Carbalan requested that the court

charge the jury that the city's "de facto policy" includes "the acts of those whose acts and edicts fairly represent the policy of the City of Buffalo." The court refused.

In response to special interrogatories, the jury found that Judge Bagley had "denied Plaintiff Carbalan his right to reasonable bail by refusing to accept the tendered motor club cards," but that the city did not have "a policy approving such action...." The jury, asked what sum of money would compensate Carbalan for damages sustained for the "policies of the City of Buffalo," answered "None." The court then entered a judgment that Carbalan take nothing. Finding that Carbalan had not "prevailed," it refused to award attorneys' fees under 42 U.S.C. § 1988.

## II

■ Carbalan, citing the statement in Federal Rule of Civil Procedure 15(a) that leave to amend a complaint "shall be freely given when justice so requires," asks us to reverse the district court's denial of leave to amend his complaint to add claims for declaratory and injunctive relief against Judge Bagley. We can do so only if the court below abused its discretion. *Bamm, Inc. v. GAF Corp.,* 651 F.2d 389, 391 (5th Cir.1981); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). A court's exercise of discretion to deny leave to amend is informed by "undue delay" and "undue prejudice to the opposing party." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ Given the broad reach of judicial immunity the rejected amendment attempting, as it did, to slip past immunity and expose the judge to the threat of attorneys' fees presented a significant shift. As the case had long been framed, Judge Bagley's immunity defense was virtually certain and his expectation of dismissal at the outset of trial was justifiable; it is reasonable to infer that this expectation affected his trial preparation, a reality that while not lifted up on the record, was doubtlessly apparent

to the trial judge. We cannot conclude that the district court abused its discretion in taking into account the lulling of Judge Bagley even though there is no suggestion that it was other than the product of oversight or inadvertence. Similarly, the court was within its discretion in denying leave to amend requested during the trial. *See Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024–25 (5th Cir.1981) (approving denial of leave to amend on similar facts).

■ Nor can Carbalan rely on Rule 15(b), which allows amendments to pleadings to conform to the evidence presented at trial. Rule 15(b) deals only with issues "tried by express or implied consent of the parties." Judge Bagley did not consent to trial of any claims against him for declaratory or injunctive relief; he successfully moved to be dismissed entirely as a defendant. The trial record reflects no discussion or argument concerning any claims for declaratory or injunctive relief.

■ Finally, we cannot agree with Carbalan that his general prayer for "such other and further relief ... to which plaintiff may be entitled" constituted a demand for declaratory and injunctive relief in the face of his proposed pretrial order in which he sought only damages.

### III

Carbalan argues that the district court erred in its charge on municipal liability; that in any event, the jury's finding that Buffalo had no policy approving Judge Bagley's acts was against the great weight of the evidence. We need not reach Carbalan's complaints about the jury instructions, because on the facts adduced at trial, Buffalo was not liable for Judge Bagley's acts as a matter of law.

The parties agree that Buffalo city officials exercised no control over the municipal court's operations, and gave no guidance or instructions to Judge Bagley. Yet, Carbalan argues that Judge Bagley was, or the jury could have so concluded, a policymaking official of the city, "whose edicts or acts may fairly be said to represent official

policy," *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, and that the city is therefore responsible in damages for any constitutional violation committed by Judge Bagley. The argument relies on *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980), in which we stated that in some areas of responsibility, county judges in Texas are "the final authority or ultimate repository of county power," and that counties can be held responsible for county judges' acts in those fields.

Carbalan, however, ignores a crucial distinction made in *Familias Unidas*. In Texas, county judges perform "numerous executive, legislative, and administrative chores," and in doing so can shape county policy. *Id.* at 404. Their judicial function, though, "may more fairly be characterized as the effectuation of the policy of the State of Texas ... for which the citizens of a particular county should not bear singular responsibility." *Id.* Indeed, the specific holding of *Familias Unidas* was that a county was *not* liable under *Monell* for a county judge's enforcement of an unconstitutional state statute.

■ The city of Buffalo had no policy regarding Judge Bagley's judicial duties. If Judge Bagley erred in their exercise, the city is not liable simply because Judge Bagley held the office of municipal judge, any more than the county in *Familias Unidas* was liable for the judicial acts of a county judge. The urged reading would subvert the message of *Monell* that municipalities cannot be vicariously liable under § 1983. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (en banc).

On these facts, the district court would have been justified in granting a directed verdict for the city of Buffalo, and was *a fortiori* correct in denying Carbalan's motion for new trial. Because a verdict for Carbalan against the city would have been impermissible as a matter of law, any error in the jury charge on municipal liability was harmless. *Lyle v. R.N. Adams Construction Co.*, 402 F.2d 323 (5th Cir.1968).

## IV

■ Finally, Carbalan argues that because the jury agreed that the refusal of the motor club cards was a constitutional deprivation, he "prevailed" within the meaning of 42 U.S.C. § 1988, and should have been awarded attorneys' fees. To prevail, though, a plaintiff must obtain "the primary relief sought." *Taylor v. Sterrett*, 640 F.2d 663, 669 (5th Cir.1981). Carbalan has won no relief against anyone, and is not entitled to attorneys' fees. *Robinson v. Kimbrough*, 652 F.2d 458, 466 (5th Cir.1981) (plaintiffs cannot recover attorneys' fees "for the pursuit of claims on which they obtained no relief, judicial or otherwise.").

The judgment of the district court is AFFIRMED.