**Dr. Larry CUNNINGHAM, Plaintiff,**

**and**

**Dental Leasing, Inc., Plaintiff-Appellee,**

**v.**

**HEALTHCO, INC., et al.,
Defendants-Appellants.**

No. 86–1358.

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1987.

Rehearings Denied Sept. 18, 1987.

---

W.W. Mitchell, II and Bruce W. Akerly, Dallas, Tex., for defendants-appellants.

Moore & Peterson, William N. Radford and William F. LePage, Andrea Semple, Moore & Peterson, Dallas, Tex., for plaintiff-appellee.

Before GARZA, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this diversity case, we review the award of $259,000 in damages and $90,000 in attorneys' fees to Dental Leasing, Inc., a Texas corporation engaged in the management of dental clinics, for breaches of contract and misrepresentations made by Healthco, Inc., and H.P.S.C., Inc., both Massachusetts corporations involved in the sale, distribution, and lease financing of dental equipment. We reverse the award of $95,000 to Dental Leasing stemming from the breach of the computer agreement, and we affirm all other damages awards. We reverse the award of $90,000 in attorneys' fees, and remand the case for a recalculation of those fees.

## Facts

Appellee Dr. Larry Cunningham, a plaintiff in the case below, was a dentist engaged in private practice. In 1980, he entered into discussions with representatives of appellants Healthco, Inc., and H.P.S.C., Inc., concerning the concept of retail dentistry. Healthco is a distributor and supplier of dental equipment and merchandise to dentists throughout the United States. H.P.S.C. provides for the purchase and lease financing of dental equipment from Healthco. Prior to 1983, H.P.S.C. was Healthco Professional Services Corp., a wholly-owned subsidiary of Healthco. Presently, Healthco owns 80% of H.P.S.C.

Healthco's agents in its discussion with Dr. Cunningham were Bill Morsinkhoff and Stan Foster. Morsinkhoff was Healthco's regional equipment manager in its Dallas office, and was also an agent of H.P.S.C. Cunningham testified that Foster urged him to consider opening a series of "retail" high-volume dental centers located in shopping malls in the Dallas metropolitan area. Foster provided magazine, newspaper, and journal articles on the subject of retail dentistry, and warned Cunningham that "there were going to be a lot of big dental centers taking over [the] practice and basically shutting out the private practitioners." Foster related that "Healthco was telling him that this thing was fixing to happen

and they wanted to be a part of it in Texas."

Pursuant to his discussions with Foster, Cunningham entered into two real estate leases in early 1981 for space in two suburban Dallas shopping centers. He submitted financial statements to Healthco, and received verbal assurances that it would lease to him the necessary equipment for the two new clinics and that H.P.S.C. would provide lease financing. In early February, 1981, Cunningham executed two equipment lease agreements for the two clinics, as well as a contract to purchase computer equipment for the clinics from a division of Healthco.

In mid-February, 1981, Foster and Cunningham met with Foster's attorney, Cunningham's attorney (Mr. Green), a dental associate of Cunningham's who was interested in becoming involved in retail dentistry (Dr. Bonola), and Cunningham's dental clinic manager (Donna Duncan). The purpose of the meeting was to discuss the possibility of opening a series of dental clinics in various locations in the Dallas area, and the meeting ended in an agreement that Cunningham and Bonola would open two more clinics, which would be combined in a four-clinic operation with the two offices Cunningham had began setting up.

The parties dispute the exact nature of the specific agreements entered into between Cunningham and Bonola on one side, and Healthco and H.P.S.C. on the other. The jury found that three oral contracts had been made between Cunningham and Healthco: an agreement that Healthco would sell Cunningham the business opportunity to own and manage four dental clinics; an agreement that Healthco would provide an integrated management system for the operation of the clinics; and an agreement that Healthco or H.P.S.C. would provide financing for all four clinics. The jury found that Healthco and/or H.P.S.C. breached those contracts, as well as a fourth contract by which Healthco promised to sell to Cunningham a computer system that would satisfy the business needs of the four-clinic operation.

Also discussed at the February meeting was the creation of a corporation, eventually named Dental Leasing, Inc., to own and manage various parts of the new business. The parties dispute whether the separate corporation was the idea of Cunningham and his lawyer or of Healthco's agent Foster and his lawyer. There was testimony, however, that Foster had provided magazine articles discussing the fact that the majority of such retail dental centers were owned by management companies. Further, there was discussion of a Texas law regulating and partially limiting the right of a non-dentist to own equity in a dental clinic, and the use of a separate management company was discussed as one method of avoiding the ownership constraints otherwise created by the law. The jury determined that Dental Leasing was a third-party beneficiary of all four of the contracts breached by Healthco and/or H.P.S.C.

After the February meeting, Cunningham leased two more spaces in two additional shopping malls in the Dallas area. Bonola submitted financial statements to supplement those of Cunningham in order to obtain financing for the third and fourth clinics from H.P.S.C. Through Morsinkhoff, Healthco gave the dentists the same verbal assurances that credit was forthcoming that it had earlier given Cunningham in regard to the first two clinics. Three months later, however, in May, 1981, H.P.S.C. advised the dentists that it had decided not to finance clinics three and four. The jury found that Healthco and H.P.S.C. induced Cunningham to rely on their verbal assurances that they would provide financing for these clinics. After appellants denied Cunningham and Bonola further credit, Cunningham obtained a series of loans and credit packages from various banks and leasing agencies. Foster and Morsinkhoff helped Cunningham locate several of these alternative financing arrangements. Ultimately, enough credit was established to allow Dental Leasing to lease the Healthco dental equipment and computer system needed for the third and fourth clinics.

Dental Leasing had intended to open all four clinics by June 1, 1981. While the first clinic opened in the spring, the second

clinic did not open until July 4, the third in the middle of August, and the fourth in September, 1981. From the time the clinics opened until the end of 1982, Healthco worked with Dental Leasing to fix the constant problems afflicting the computer system set up for the clinics. There was testimony that Healthco agents promised either to correct the problems with the computer system or rescind the computer lease contracts and create a new system. The jury found that the computer system never performed as promised, and that Healthco breached its contract to provide a functioning computer system that would satisfy the needs of the four-clinic operation.

On February 23, 1983, a year and a half after the fourth clinic opened, Dental Leasing filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. On November 9, 1983, a plan of reorganization was approved by the United States Bankruptcy Court. The confirmed plan contained a reservation of rights by the creditors in the event that Dental Leasing recovered, by way of lawsuit, any damages from Healthco or H.P.S.C.

On July 2, 1984, Cunningham and Dental Leasing filed the instant lawsuit. The jury found that Healthco and H.P.S.C. had breached the contracts described above, and that they had engaged in deceptive trade practices under the Texas Deceptive Trade Practices Act (DTPA). Dental Leasing was awarded a total of $259,000 in damages, along with $75,000 attorney fees for trial and $15,000 for appeals. Healthco and H.P.S.C. duly filed this appeal, claiming that (1) the evidence was not sufficient to support findings that oral contracts existed; (2) the claims against appellants based on oral contracts are barred by the statute of frauds; (3) Dental Leasing was not a third-party beneficiary of the three oral contracts and therefore cannot recover even if the contracts were breached; (4) evidence was not sufficient to support a finding that appellants breached the computer contract, and, in any event, Dental Leasing was not a third-party beneficiary of the computer contract; (5) Dental Leasing is not a "consumer" within the meaning of the Texas DTPA, and Dental Leasing's DTPA claims are barred by the applicable statute of limitations; (6) the trial court abused its discretion in denying appellants' motion for leave to file an amended answer with respect to the affirmative defense of accord and satisfaction; (7) evidence was not sufficient to support the damage awards, and those awards are duplicitous and fatally conflict with some of the jury's findings; (8) the trial court's charge to the jury regarding damages was misleading and unfair; and (9) the trial court erred in awarding attorney's fees. We will consider these claims in turn.

### First Issue: Three Oral Contracts

■ Appellants claim that the evidence was insufficient to support findings that appellants and Cunningham entered into three oral contracts. The jury found that the parties made the following oral contracts: an agreement that "obligated Healthco to sell Cunningham the business opportunity to own and manage the four dental clinics involved in this case;" an agreement that "obligated Healthco or H.P.S.C. to provide financing for the third and fourth clinics;" and an agreement that "obligated Healthco to provide an integrated management system designed for the operation of four dental clinics."

Appellants claim that the terms "business opportunity" and "integrated management system" are too vague to constitute sufficiently certain contract terms, and that the amount of financing appellants would provide for the third and fourth clinics was never decided upon. Appellants assert that these oral agreements are unenforceable because they do not "define [their] essential terms with sufficient precision to enable the court to determine the obligations of the parties." *Weitzman v. Steinberg*, 638 S.W.2d 171, 175 (Tex.Ct. App.—Dallas 1982, no writ).

First we review the evidence to support the existence of a contract to provide a business opportunity. Prior to the making of any agreements, Foster presented Cunningham with a set of income projections for various proposed sites for retail dental clinics. These projections, described by Cunningham as "pro-formas," included

summaries of estimated expenses and revenues based on a "standard" office set-up, including a recommended design, a list of equipment and furnishings, and a computer system. To the extent that Healthco presented these figures as a reliable indication of Cunningham's prospects, even while advising that the figures should not be relied upon as representations of what profits Cunningham personally would reap, Healthco must have been able to calculate with reasonable certainty the costs of equipment, financing, computer systems, advertising, office rent, insurance, staffing, etc.—all the elements of what Foster described as a "turnkey package."

Foster testified that the term "turnkey package" was one that he first used to describe what Healthco was offering Cunningham. Cunningham, in turn, testified that he "understood that package to be what it would take to open up the office." In conjunction with Foster's offer of the turnkey option, he and Cunningham discussed Healthco's ability to help Cunningham with financing, staffing needs for both dentists and non-professional help, advertising, and a computer management system. Also discussed was Healthco's ability to provide dental and office equipment including dental chairs, cabinetry, reception and other desks, and handpieces.

Beyond these discussions, the fact that two of the four clinics were successfully opened with Healthco's full participation lends credence to appellees' argument that the parties had an agreement definite enough to provide for the opening of four retail dental clinics. Healthco did in fact carry out several parts of the overall agreement to provide a "business opportunity": Healthco helped Cunningham in the selection of office staff in the first two clinics, and it provided the equipment and equipment financing for those clinics. Further, Healthco was involved in the selection of sites for all four dental clinics, and aided in the office design for each clinic. It provided that equipment for the third and fourth clinics, although the lease financing was obtained elsewhere. The written order agreements for the equipment were prepared by Healthco, and their identification of the specific quantities and brand names

of the equipment corresponds to the standard packages on which Healthco's income projections for the clinics were based. Those written agreements and the other actions taken by Healthco to assist Cunningham in opening the four clinics are sufficient evidence to permit a jury to find that appellants came to a definite agreement with Cunningham to sell him the business opportunity to operate and manage four retail dental clinics.

Second, we must consider the evidence to support the existence of a contract to provide an integrated management system. Cunningham testified that Foster discussed with him the need for a management system different from that previously used by Cunningham in his private practice. The management system encompassed the delivery of a computer system, the training of the office staff, and, generally, the creation of a workable system of office procedures and policies. The computer would be a central component in a system designed to handle the patient flow, the insurance forms, the payrolls, and the general ledger. Cunningham was told that Healthco "had a management section or division that could come in and help establish the management of the office...." Healthco had created these systems before, and had developed computer software, procedure manuals and instructions to supplement their representations. There is sufficient evidence to permit the jury to find that appellants and Cunningham came to a meeting of the minds of sufficient clarity and finiteness to constitute a valid contract for an integrated management system.

Finally, we consider whether there is sufficient evidence to support the existence of a contract to provide financing for four clinics. Healthco did provide financing for the first two clinics. When arrangements for clinics three and four were needed, Cunningham testified, Healthco promised "to structure two more leases just like they had if I would get another dentist to co-sign." Cunningham then arranged his association with Dr. Bonola. Healthco's agents outlined lease transactions for the "same two packages, standard packages" as were involved in the first two clinics,

providing for the same lease term—seven years—and the same monthly payments. Healthco's agent Morsinkhoff testified that he gave Cunningham verbal assurances that these financial arrangements for the third and fourth clinics had been verbally approved by Healthco and/or H.P.S.C. Further, both Morsinkhoff and Healthco's President George Mundy admitted that Healthco's regional offices and Healthco's customers had grown accustomed to relying on such verbal committments. Cumulatively, this evidence is sufficient to permit the jury to find that Cunningham and appellants had a meeting of the minds regarding Healthco's commitment to finance all four of Cunningham's clinics.

Healthco complains, however, that the precise financing arrangements were never agreed upon, pointing out that the tentative arrangements for financing the last two clinics also included possible rebates and additional funds for working capital. The uncertainty is said to arise because various witnesses described the agreement with Healthco in different ways. The various descriptions are not contradictory, however. The testimony reveals an agreement to provide loans in the amount of $180,000.00 per clinic, plus a possible rebate of approximately ten percent, and possible additional working capital of $35,000.00 per clinic. The total financed amount, therefore, could have reached as high as $235,000.00 per clinic for the third and fourth clinics.

Whether or not the available financing for the rebate and working capital was uncertain, any such uncertainty would not necessarily have prevented the formation of a contract to finance the equipment lease for $180,000.00 per clinic. It is well settled in Texas law that "[t]wo persons may fully agree upon the terms of a contract, knowing that there are other matters on which they have not agreed and on which they expect further negotiation. Such an expectation does not prevent the agreement already made from being an enforceable contract." *Frank B. Hall & Co. v. Buck,* 678 S.W.2d 612, 629 (Tex.Ct. App.—Houston 1984, writ ref'd n.r.e.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985). The fact that the specific details of part of the financing package had not yet been worked out could be evidence that an agreement was not reached. It is not conclusive, however, and therefore "the jury was entitled to resolve the question of the intention of the parties." *Id.*

Further, a contract is not unenforceable merely because every term of the contract is not finally decided upon by the parties, as long as the courts can interpret the obligations of the respective parties without supplying material terms. *See e.g., Yellow Freight System v. North American Cabinet Corp.,* 670 S.W.2d 387, 390 (Tex.Ct.App.—Texarkana 1984, no writ)("As to price, the rule is that when the parties have done everything else necessary to make a binding agreement, their failure to specify a price will not defeat the contract. The law will presume that a reasonable price was intended."); *Norton v. Menard Lumber Co.,* 523 S.W.2d 791, 793 (Tex.Civ.App.—San Antonio 1975, no writ)("It is well settled that there may be an agreed price for work and labor to be performed without an agreement on a specific sum.").

In this case, Healthco had made specific representations as to the business requirements for opening a dental clinic, it proposed a "standard package" for opening such clinics, and it had in fact financed the opening of two clinics for Cunningham on virtually the exact same terms and conditions. This evidence provides sufficient certainty to determine the nature and extent of Healthco's obligation to finance Cunningham's third and fourth clinics. *Cf. Pine v. Gibraltar Savings Ass'n,* 519 S.W.2d 238 (Tex.Civ.App.—Houston 1974, writ ref'd n.r.e.)(agreement to provide credit without agreement as to total amount of loan, interest rate, schedule of interest payment, ratio of loan to appraisal value, and maturity date was not an enforceable contract); *Terrell v. Nelson Puett Mortgage Co.,* 511 S.W.2d 366, 369 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.)("The circumstances surrounding [the agreement] were not such so as to indicate any approximate financial scope of appellee's promise to furnish credit underwriting for six years.").

We conclude that the record contains sufficient evidence to support the jury's findings that appellants and Cunningham entered into three oral agreements for the supply of a business opportunity, an integrated management system, and financing for four retail dental clinics.

### Second Issue: Statute of Frauds

■ Appellants claim that their obligations under each of the three oral contracts were incapable of being performed within one year, and therefore the agreements are unenforceable under the Statute of Frauds. The record establishes, however, that the oral contracts, made in February, 1981, were to have been substantially performed by June 1, 1981, the scheduled date of the opening of the fourth clinic. Cunningham stated that "what [Healthco] said they would do, most all of that should be done by the initial opening of the offices, and then an extended period of time would be being there [sic] on management problems and consulting with us...." The last clinic actually opened in September, 1981, and its financing was secured in December of that year, before a year had passed.

As for the ongoing obligation of Healthco to provide management assistance and consulting, "the rule is that, where the time for performance is indefinite in that the agreement merely provides for the performance of a particular act or acts which can conceivably be performed within one year, the Statute of Frauds is inapplicable, however improbable performance within one year might be." *Hardin Assoc., Inc. v. Brummett,* 613 S.W.2d 4, 7 (Tex.Civ. App.—Texarkana 1980, no writ). The jury specifically found that each of the three contracts was capable of being performed in one year. Their finding is supported in the record, and dispositive of the issue. *See Mercer v. C. A. Roberts Co.,* 570 F.2d 1232, 1236 (5th Cir.1978)("[W]hen no time for performance has been specified in the agreement, a reasonable time will be implied.... When the agreement is unwritten and its interpretation depends on disputed facts, the question of 'reasonable duration' is one of fact to be determined by the trier of fact."); *Adams v. Big Three Indus.,*

*Inc.,* 549 S.W.2d 411, 415 (Tex.Civ.App.— Beaumont 1977, writ ref'd n.r.e.).

### Third Issue: Dental Leasing as a Third Party Beneficiary

■ Appellants argue that the jury's award of damages to Dental Leasing for the breach of the three oral contracts cannot stand because Dental Leasing was neither a party to the contracts, in privity with either appellant, nor a donee or creditor beneficiary of the contracts. Because we find that Dental Leasing was a third-party beneficiary of the three oral contracts, we affirm the award of damages to Dental Leasing for the breach of those contracts by appellants.

Appellees do not counter the contention that Dental Leasing was not in privity with either appellant with regard to the oral contracts. Appellees do claim, however, and the jury specifically found that Dental Leasing was a third-party beneficiary of the contracts. In Texas it has long been established that

> Parties are presumed to contract for themselves and it follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties.

*Briercroft Savings & Loan Ass'n v. Foster Financial Corp.,* 533 S.W.2d 898, 901 (Tex. Civ.App.—Eastland 1976, writ ref'd n.r.e.), *citing Republic National Bank v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 79 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r. e.). Thus, the "intention of the contracting parties is of controlling significance to a determination that a third party may enforce the contract provision." *Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d 501, 503 (Tex.1975).

We find sufficient evidence to support the jury's findings that Dental Leasing was an intended beneficiary of the oral contracts in the testimony of Dr. Cunningham, Dr. Bonola, and Mr. Green, Cunningham's attorney. All three testified that the idea to create Dental Leasing originated with Healthco's agent Foster and his attorney at a meeting in mid-February, 1981. Green claimed that "[a]t that particular meeting

the entire structure setting out the entire operation was laid out, that we should have two separate corporations." It was the understanding of the parties that a Texas law prohibited non-dentists from advertising dental services, or from splitting dental fees with dentists. According to Green, Foster represented that Healthco "had researched what the other people were doing in Florida [where similar laws applied], how they were setting them up. The attorney with him had done some research, and [two separate corporations] was the best structure to get to the retail dentistry so that you could, number one, advertise and, number two, have investors who were not dentists."

The non-dentist corporation, eventually named Dental Leasing, was to own the hard assets in the clinics, including the equipment, the furniture, and the computer system.[1] Dental Leasing was to purchase the assets, obtain the real estate leases, and construct the clinics. In short, Dental Leasing was to do everything except advertise and provide dental services. Green claimed that Foster's attorney was given the task of setting up the two corporations, but that when he failed to do so within two weeks, Green himself incorporated Dental Leasing.

Cunningham testified that Foster's literature about retail dentistry showed that the majority of retail dental centers were owned and operated by management companies, not by dentists. Cunningham claimed that the "information on the corporate entities came from" Foster, whose attorney "gave us the layout of how we should form it ..." at the mid-February meeting. Cunningham testified that Foster "recommended that structure to" him. Bonola also recalled that the decision to set up corporations was reached at the mid-February meeting. When asked "who discussed the formation or initiated the discussion of the formation of a corporation to run the clinics," Bonola replied, "In the part of the discussion that I was involved with, the lawyer with Mr. Foster was discussing the majority of it." This testimony is sufficient to support the jury findings that, from the start, all parties intended Dental Leasing to be created, to own the hard assets in the four dental clinics, and to benefit from the oral contracts by which Healthco and/or H.P.S.C. were obligated to provide a business opportunity, an integrated management system, and financing for four clinics.

Appellants urge that the discussions concerning the creation of Dental Leasing are irrelevant, citing *Republic National Bank, supra,* for the proposition that "[i]t is the intention and purpose of the contracting parties, as disclosed within the four corners of the instrument, which should control." 427 S.W.2d at 79. Since third-party status cannot "rest on implication," *Exchange Bank & Trust v. Lone Star Life Ins. Co.,* 546 S.W.2d 948, 952 (Tex.Civ.App.—Dallas 1977, no writ), and since "any doubt should be resolved against" finding an intent to benefit a third party, *Texas Bank & Trust v. Lone Star Life Ins. Co.,* 565 S.W.2d 353, 357 (Tex.Civ.App.—Tyler 1978, no writ), appellants point to the absence of reference to Dental Leasing in the equipment lease contracts signed by Cunningham as dispositive evidence that Dental Leasing was not an intended beneficiary of those contracts.

The explanation for Cunningham's personal guarantee on the lease contracts is that Healthco wanted the assurance of Cunningham's personal liability on the notes. At that time, Dental Leasing had little or no assets, and no history of business success on which Healthco could rely. Appellants point to testimony by the President of H.P.S.C. to support their claim that Healthco and H.P.S.C. always require "dentists to obligate themselves personally for any purchases or financing." The same desire to be secured by personal guarantees led Healthco to require Cunningham to recruit Dr. Bonola as a partner and submit his financial statement.

But Healthco's desire to insure its financial security is not a legal defense to the issue of its intent to benefit Dental Leasing. Healthco's personal-guarantee policy

---

1. The other corporation was to perform consulting and management functions. Also discussed was an "advertising group" that would be separate from the other corporations. None of these entities, other than Dental Leasing, was ever created.

is completely consistent with Dental Leasing's possible status as an intended beneficiary of the guaranteed contracts. Moreover, we need not consider Dental Leasing's status in the confines of those written agreements, for the oral contracts between Cunningham and appellants comprised obligations broader than those found in the equipment lease agreements. To that extent, the "provisions of the contract" upon which the claim of "third party beneficiary succeeds or fails," *Greenville Indep. School Dist. v. B & J Excavating, Inc.*, 694 S.W.2d 410, 412 (Tex.Ct.App.—Dallas 1985, writ ref'd n.r.e.), are the oral promises and understandings between the parties as reflected in the trial testimony and established by the findings of the jury. The absence of references to Dental Leasing in all the written contracts and correspondence between the parties is merely evidence for the jury to weigh against the testimony of appellees and others that Healthco knew and intended that Dental Leasing would benefit from the oral agreements entered into by the parties. The jury weighed that evidence, and we have no reason to upset their decision.

*Fourth Issue: The Computer Contract*

■ Appellants assert that there is insufficient evidence to support the jury's findings that (1) Dental Leasing was a third-party beneficiary of Healthco's contract to provide a computer system, and (2) Healthco breached that contract. Because we find that Dental Leasing was not a third-party beneficiary of the written computer contract, and because there is no jury finding that any broader, oral contract was entered into, we reverse the judgment of the district court in favor of Dental Leasing based upon the finding that the computer contract was breached.[2]

That portion of the jury instruction relating to appellees' general contract claims contained the following representation of the contentions of the parties:

Plaintiffs allege that during 1981, Cunningham agreed, orally or in writing, to a series of contracts with defendants to supply ... computer equipment ... necessary to establish four dental clinics.

. . . .

Defendants contend that, except as to the computer equipment, plaintiffs' claims arise out of various alleged oral contracts ...

The trial court proceeded to ask, with regard to each contract or alleged contract, a series of three questions: (1) was there a contract, (2) was Dental Leasing a third-party beneficiary of that contract, and (3) did appellants breach the contract.

The series relating to the computer contract, in contrast, only contains two questions: was Dental Leasing a third party beneficiary of "the contract for the purchase of a computer system," and did Healthco breach "its contract to provide the promised computer system." The jury was never asked to find specifically that a computer contract existed. Apparently, the existence of a computer contract was not at issue. That conclusion is strengthened by reference to the Plaintiff's Proposed Jury Charge, where appellees urged the trial court, without success, to instruct the jury that "[t]he parties agree that a contract was entered into between Healthco, Inc. and Dr. Larry Cunningham for the purchase of a computer system."

If the existence of "the contract" was not at issue, then the inescapable implication is that the parties and the trial court considered "the contract" to consist of a written document: the "computer purchase and program license agreement" between Cunningham and Healthco, which appellants claim was signed on February 11, 1981 (hereinafter "the license agreement"). That document provided for Cunningham to purchase from Healthco the computer software that he ultimately attempted to use in all four of his dental clinics.

If the license agreement was "the contract" referred to in the issue submitted to the jury, then the jury's answer that Dental Leasing was a third-party beneficiary to "the contract" is incorrect as a matter of law. As we pointed out above, in Texas

2. We do not address the issue, contested by appellants, of whether Healthco breached the written contract regarding the supply of computers and computer software to Dr. Cunningham.

the law is clear that one claiming to be a third-party beneficiary succeeds or fails according to the provisions of the contract sued upon. *Greenville Indep. School Dist., supra,* 694 S.W. at 412. When that contract is a written one, then the search for the parties' intent regarding a third-party beneficiary is limited to "the four corners of the [written] instrument." *Republic National Bank, supra,* 427 S.W.2d at 79. The four corners of the license agreement totally lack any reference to Dental Leasing. Under these circumstances, the jury may not weigh the trial testimony to determine the parties' intent with regard to Dental Leasing. The intent to make Dental Leasing a third-party beneficiary does not "clearly appear" on the face of the document, and that is dispositive of Dental Leasing's claim. *See Merit Drilling Co. v. Honish,* 715 S.W.2d 87, 92 (Tex. Ct.App.—Corpus Christi 1986, no writ).[3]

Accordingly, we reverse the judgment in favor of Dental Leasing based on "Healthco's breach of its contract to provide the promised computer system."

*Fifth Issue: Deceptive Trade Practices*

■ Appellants raise two arguments regarding their liability under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§ 17.41—17.63 (Vernon's Supp.1987)[hereinafter "DTPA"]. Appellants raise for the first time in their post-trial Motion for Judgment or Judgment Notwithstanding the Verdict a challenge as to Dental Leasing's status as a "consumer" under the DTPA. The district court declined to address the merits of the issue, finding that "[s]ince defendants did not ever contend, before or during trial, that Dental Leasing was not a 'consumer,'" the issue was not timely raised. This ruling by the district court was not an abuse of its discretion, since defenses not raised or argued at trial are ordinarily waived by the parties failing to raise them. *See Grumman Aircraft Eng. Corp. v. Renegotiation Board,* 482 F.2d 710, 721 (D.C.Cir.1973), *rev'd on other grounds,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *Echevarria v. U.S. Steel Corp.,* 392 F.2d 885 (7th Cir.1968); *Zweig v. Bethlehem Supply Co.,* 186 F.2d 20 (5th Cir.1951); *Adams v. Thompson,* 560 F.Supp. 894, 896 (M.D.La. 1983); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 457 F.Supp. 404, 441 (S.D.N.Y. 1978), *rev'd in part on other grounds,* 603 F.2d 263 (2nd Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *Ballew v. Assoc. Financial Services Co. of Neb.,* 450 F.Supp. 253, 270 (D. Neb.1976). Since appellants were capable of raising this defense to the DTPA claims at any point during the trial, they cannot now claim prejudicial harm in the trial court's refusal to consider their untimely assertion of the defense.[4]

As their second DTPA assertion, appellants urge that the DTPA claims brought

---

3. Although the parties do not raise the issue, we explain why we do not deem a finding of a broader oral contract under the authority of Fed.R.Civ.P. 49(a). Rule 49(a) provides that if a court omits any issue of fact in submitting written questions to a jury, "each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

It is in the realm of possibility that the parties made an oral contract to provide a computer system. Appellees asserts that Healthco promised to provide a system that "did everything for the doctor," encompassing the software and the hardware, and comprising the license agreement as well as the four computer equipment lease agreements signed by Cunningham and C.H. Funding Corp., Healthco's leasing agent.

There is some evidence in the record to support appellees' claim. Had the trial court asked the jury to decide whether an oral computer agreement was made, the jury might have found that a broader agreement existed. Since it would be at least possible to show that Dental Leasing was a third-party beneficiary of such a broader oral contract, the finding would be "in accord with the judgment on the special verdict."

We decline to deem such a finding, however, because of the circumstances. The inclusion of a jury question to determine the existence of each of the first three oral contracts served as an assurance that the failure to ask such a question with regard to the computer contract was not an inadvertent omission. We will not "deem" the existence of an oral contract where it appears that the district court, without objection by either party, specifically chose not to submit the issue to the jury.

4. We note that the district court's refusal to consider the merits of appellants' claim does not

against them by appellees were barred by the applicable statute of limitations.[5] The DTPA provides for a two-year limitations period:

> actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

DTPA § 17.56A. Appellees filed suit against appellants on July 2, 1984. At trial, the jury answered four specific questions regarding whether appellees' cause of action accrued on or before July 2, 1982. The jury found that appellees either knew or should have known by that date that H.P.S.C. "would not provide the requested financing for the third and fourth clinics," but that appellees did not know nor should have known by that time that the other two oral contracts and the written computer contract would be breached.

Appellants argue that there is no evidence in the record to support the jury's findings that claims based on the two oral and one written contract were not barred by the statute of limitations. Appellants assert that all the facts giving rise to all three of Dental Leasing's oral contract claims had arisen by May, 1981, and that

the facts underlying the computer contract claim had arisen by June, 1981.

Appellees respond that the dispositive date for purposes of the statute of limitations is February 24, 1981, asserting that they did not nor should not have known that appellants would breach their contracts by that date. Two years after that date, on February 24, 1983, Dental Leasing filed a voluntary Chapter 11 bankruptcy petition. Relying on Section 108 of the Bankruptcy Code, 11 U.S.C. § 108, appellees assert that the statute of limitations was tolled on the day the bankruptcy petition was filed, and that the tolling was still in effect when they filed suit against appellants on July 2, 1984.

Section 108(a) provides:

(a) If the applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

> (2) two years after the order for relief.

11 U.S.C. § 108. Section 1107(a) of the Bankruptcy Code allows the rights and powers bestowed upon a trustee in § 108 to be exercised by a debtor-in-possession.[6]

---

subject appellants to a miscarriage of justice because their claim has little merit. "Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d [535, 541 (Tex. 1981)].... A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the good or services sought or acquired by the consumer form the basis of his complaint." *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983). Since undisputed testimony shows that Dental Leasing, not Dr. Cunningham, made all the payments under all the leases and purchase agreements at issue in this case, regardless of whether it was a party to or a beneficiary of the particular agreement, Dental Leasing has demonstrated the necessary relationship to the goods and services at issue in the case to be considered a consumer for the purposes of the DTPA.

**5.** Appellants also urge on appeal that the common law fraud claims made by appellees were not brought within the applicable two-year statute of limitations. Since the jury found that appellants did not commit common law fraud and the trial court dismissed those claims against appellant, there is no statute of limitations issue as to those claims.

**6.** 11 U.S.C. § 1107(a) provides: "Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter."

Appellant concedes that Dental Leasing was a debtor-in-possession during its reorganization, and that it was entitled, during reorganization, to the tolling period provided by § 108(a). Further, appellants do not dispute that the instant suit was filed within the tolling period, under § 108(a)(2).

■ While a debtor-in-possession is entitled to § 108's tolling period, however, a debtor is not. *In re Dickson*, 432 F.Supp. 752, 756 (W.D.N.C.1977); *In re Dohm*, 14 B.R. 701, 702 (Bankr.N.D.Ill.1981); *In re Craig*, 7 B.R. 864, 866 (Bankr.E.D.Tenn. 1980). Thus, the statute of limitations issue is distilled to the question of whether Dental Leasing was still a debtor-in-possession on July 2, 1984. If it was, then it would have been entitled to rely on § 108's tolling of the limitations period, and the limitations period would extend back to February 24, 1981. On the other hand, if the reorganization period had ended and Dental Leasing had returned to "debtor" status, then § 108's protection would not have been available to it, and the two-year statute of limitations dating back to July 2, 1982, would apply to this case.

Appellants claim that the reorganization period ended upon confirmation of Dental Leasing's Amended Consolidated Plan of Reorganization on November 9, 1983. Confirmation of the reorganization plan automatically terminated the bankruptcy estate, according to appellants, and caused a transfer of title "so that [Dental Leasing] might deal with its property and the world as though it had never been subject to the jurisdiction of the bankruptcy court." *In re NJB Prime Investors*, 3 B.R. 553, 556 (Bankr.S.D.N.Y.1980). Appellants assert that at that point Dental Leasing reverted to its status as a debtor, and no longer enjoyed the benefits of § 108 as a debtor-in-possession.

■ We conclude that Dental Leasing was still a debtor-in-possession at the time it filed the instant lawsuit, and therefore was entitled to the tolling period provided by § 108 of the Bankruptcy Code. Section 1141(b) of the Bankruptcy Code provides that "[e]xcept as otherwise provided in the [reorganization] plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b). *See also United States v. Redmond*, 36 B.R. 932, 934 (D.Kan.1984); 5 *Collier on Bankruptcy* ¶ 1131.01[2] (15th ed. 1987). An inspection of the confirmation plan, however, reveals that potential recoveries by appellee from appellant stemming from this lawsuit were "otherwise provided" for in that plan. Section 6.5.7 of the plan specifically provides that Dental Leasing must relinquish to the plan's disbursing agent half of the cash recovery from "the Healthco Litigation," less litigation expenses, plus any balance still "due at the time of such recovery to Class 6 Creditors under this Plan."[7]

Thus, the reorganization plan does not vest Dental Leasing with the full title to its causes of action against Healthco and H.P. S.C. Having been expressly addressed in the plan, any recoveries under the causes of action remain under the supervision of the bankruptcy court. The portion of such recoveries to which Dental Leasing is entitled depends on the administration of other parts of the plan, since the Class 6 Creditors are to be satisfied before Dental Leasing. Contrary to appellants' assertion, confirmation of the reorganization plan did not leave Dental Leasing free to "deal with its property and the world as though it had never been subject to the jurisdiction of the bankruptcy court."

If confirmation of the reorganization plan did not vest Dental Leasing with title to its causes of action, then Dental Leasing was still a "debtor-in-possession," and therefore was entitled to the tolling provision of § 108. Since Dental Leasing's bankruptcy petition was filed on February 24, 1983, the two-year statutory period for DTPA claims would not have run on any claims arising after February 24, 1981. The question remains whether any of Dental Leasing's claims arose before that date.

---

7. Class 6 Creditors under the reorganization plan are creditors "having Unsecured Claims or Rejection Claims of more than $250.00."

Amended Consolidated Plan of Reorganization Art. IV, § 4.6.

We find that there is no evidence in the record to support a finding that any of Dental Leasing's claims regarding the three oral contracts and the written computer contract arose before February 24, 1981. Appellants claim only that the claims arose in May (oral contracts) or June (computer contract). Testimony establishes that the computer system was still in the process of being set up in February, 1981, and in any event the 90–day warranty on the software package had not yet expired. Equipment lease contracts were signed in March, 1981, in furtherance of the contracts to provide a business opportunity and an integrated management system. Further, as of May 4, 1981, H.P.S.C. had not yet rejected Cunningham's loan application for the third and fourth clinics, and Cunningham and Healthco's agent Morsinkhoff were both operating in reliance on Healthco's verbal assurance that such financing would be provided.

The record will not support a finding that appellees knew or should have know by February 24, 1981, that appellants' promises would not be kept. We therefore reject appellants' argument that the DTPA claims brought against them were barred by the statute of limitations.

### Sixth Issue: Accord and Satisfaction Amendment

■ Appellants claim that the trial court abused its discretion in denying appellant's Motion for Leave to File an Amended Answer with respect to the affirmative defense of accord and satisfaction. The district court's "exercise of discretion to deny leave to amend is informed by 'undue delay' and 'undue prejudice to the opposing party.'" *Carbalan v. Vaughn*, 760 F.2d 662, 664 (5th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 529, 88 L.Ed.2d 461 (1985), *citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Reviewing other cases where we have considered the denial of leave to amend, we find that in *Carbalan, supra*, the plaintiff requested leave to amend his complaint after the jury had been selected. Because the proposed amendment "presented a significant shift" in the plaintiff's legal theory that would "affect [the defendant's] trial preparation," 760 F.2d at 664, the district court denied leave, and we affirmed. In *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022 (5th Cir.1981), the trial court denied leave to amend to a Title VII plaintiff. The plaintiff's request came thirty-three months after suit had been filed, and after discovery had been completed. The delay was unexplained. We affirmed. 661 F.2d at 1024–25. In *Addington v. Farmer's Elevator Mutual Ins. Co.*, 650 F.2d 663 (5th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981), a plaintiff who wished to include a new factual basis and legal theory for his case requested leave to amend more than a year after the institution of the suit, and after discovery was completed. The trial court denied the motion, and we affirmed. 650 F.2d at 667.

In this case, the motion for leave to amend was filed eighteen months after the inception of the litigation, and eight days after the calling of the trial docket. No discovery had occurred regarding the issues raised in the proposed amended answer, accord and satisfaction. Further, appellants did not explain the delay in asking to amend their answer to include the affirmative defense. Under these circumstances, and considering that appellees' trial preparation was virtually completed at the time the motion was made, we find that granting the leave to amend would have prejudiced appellees. The trial court did not abuse its discretion in denying leave to amend.

### Seventh Issue: Damages Award

We turn to a consideration of damages, and we affirm in part and reverse in part the damage awards to Dental Leasing from Healthco and H.P.S.C. Appellant claims that there is insufficient evidence to support the awards, that they are duplicative, and that they fatally conflict in part with other jury findings. We address these issues as they arise in connection with each separate award.

#### A. The Oral Contract Damages

Appellants object to the award of $25,000 from Healthco for breach of oral contracts,

and the award of $35,000 from H.P.S.C. "for the failure of H.P.S.C. to provide financing for the third and fourth clinics," urging first that the awards are unsupported by the record. Finding evidentiary support for both awards, we reject appellants' claim.

█ The $25,000 award is supported by evidence of the delays and increased costs suffered by appellees as a result of Healthco's breach of the oral contracts to provide a business opportunity and to provide an integrated management system. Appellees testified that their original plan had been to open all four clinics by June, 1981, but that because of Healthco's breaches, the openings were delayed for a total of six months (one month for the second clinic, two for the third, and three months for the fourth clinic). Appellees testified that their leases and leasehold improvements were eighty percent complete in May, but that the problems with Healthco did not allow them to put the spaces to use until later in the year. Central to the integrated management system promised (but never delivered) by appellants was the computer system, for which appellees committed themselves to several five-year leases, for a total obligation of approximately $171,000.[8] Dr. Bonola, who was Dental Leasing's vice president at the time, testified that he spent sixty-five to seventy hours a week managing Dental Leasing beginning in the spring of 1981, when the problems with Healthco began to surface. Cunningham also testified that he spent a great deal of time trying to arrange staffing, financing, equipment leases, advertising, and other necessities to create the business opportunity promised by Healthco, and that all these management functions prevented him from practicing dentistry and earning dental fees. Appellees further demonstrated that, once Dental Leasing and the clinics were reorganized, their dental practices were very profitable. Together, this evidence is sufficient to support the jury's findings that Healthco's breach of its oral contracts caused Dental Leasing to suffer $25,000 in damages.

█ Testimony as to the damages caused by H.P.S.C.'s failure to fund the two clinics was provided by Dr. Bonola. He testified that Dental Leasing obtained replacement financing from Macrolease International, incurring additional interest and brokerage costs totalling approximately $34,900. His testimony is sufficient to support the jury's finding that Dental Leasing suffered $35,000 in damages from H.P.S.C.'s failure to fund the clinics.

Appellants also point to an alleged conflict between the jury's answer to Question 17(d)(1) and its award of damages under Question 25. In response to Jury Question No. 17, the jury found that Healthco's violation of the third oral contract, the agreement to provide financing for the clinics, did not cause Dental Leasing to suffer any damages. Question 25 asks the jury to determine damages for "the failure of Healthco to perform the agreements regarding operational clinics, financing, and management systems." Appellant claims that the award of damages improperly included amounts for Healthco's breach of the financing agreement, which the jury had found caused no damage to Dental Leasing.

The apparent conflict between these two portions of the jury instructions and verdict is resolved by the duty to make a "concerted effort to reconcile every apparent inconsistency" in the jury's verdict. *Fugitt v. Jones,* 549 F.2d 1001, 1051 (5th Cir.1977), *quoting Miller v. Royal Netherlands Steamship Co.,* 508 F.2d 1103, 1106 (5th Cir.1975). Presuming, as the district court did and as we must, that the jury intended

---

8. We consider the cost of setting up the entire computer system relevant to the issue of damages from the breach of the oral contract to provide an integrated management system, since the computer was a central component of that system. This conclusion is not inconsistent with our finding that Dental Leasing was not a third-party beneficiary to the written computer license agreement. That agreement was a pur- chase licensing agreement for the computer software. The management system agreement was broader than the license agreement in that it contemplated an overall management system which included an effective computer system. Its breach could have resulted in discrete damages completely unrelated to the separate performance of the software package.

its answers to be internally consistent, we can see that the district court could conclude that the award of $25,000 reflects damages stemming from the breach of only two of the three oral contracts: the agreement to provide a business opportunity, and the agreement to provide an integrated management system. There is substantial evidence to sustain the award based on the breach of these two contracts, and we therefore affirm the award of $25,000 from Healthco.

### B. *The Computer Contract Damages*

Appellants' second objection concerns the award of $95,000 to Dental Leasing for "the failure of Healthco to provide the promised computer system." Because Dental Leasing is not a third-party beneficiary of the written computer contract on which this award must have been based, we reverse the award of these damages.

### C. *The DTPA Damages*

The award to Dental Leasing of $75,000 for Healthco's misrepresentations and $25,-000 for H.P.S.C.'s misrepresentations are attacked on several accounts. Appellants claim that the misrepresentation awards are duplicative of the awards for breach of contract, and that the award against H.P.S.C. is not sustainable unless it is based only on H.P.S.C.'s representations regarding financing, which representations are not actionable because of the applicable statute of limitations.

Appellants' contention regarding the duplicative nature of the damages awards rests on § 17.43 of the DTPA, which provides that:

The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; provided, however, that no recovery shall be permitted under both this subchapter and another law of both actual damages and penalties for the same act or practice.

Tex. Bus. & Com. Code Ann. § 17.43. Appellants claim that since appellees' remedies for breach of contract and for DTPA violations are limited to actual damages, the district court erred in awarding Dental Leasing damages for both causes of action.

Appellants' argument, however, is dependent upon a determination that the DTPA damages are "for the same act or practice" as the contract damages. The district court made precisely the opposite determination, finding "that because the contract and DTPA issues address different acts or omissions, the awards are discrete and not mutually exclusive."

We agree with the conclusion of the district court. The record reveals that Healthco's agents Foster and Morsinkhoff made repeated representations to appellees concerning the profits to be made in retail dentistry, concerning the changing nature of consumers' dental needs, concerning the abilities of their management system and computer program, concerning the financial and support capabilities of Healthco and its divisions, and concerning equipment, staffing, advertising, and other goods and services Healthco had to offer. These representations, however, could have been found by the jury to go beyond appellants' contractual obligations. Thus, appellants' representations concerning the quality of the management control systems, the computer system, and the dental clinic system itself could give rise to a separate injury. The jury could properly find that Healthco adequately supplied a business opportunity and an integrated management system, while concurrently finding that Healthco and H.P.S.C. "represented that goods or services had sponsorship, approval, or affiliation which they did or do not have," and that "services to be provided in connection with the dental equipment leases for the third or fourth clinics were or would be of a certain quality or quantity which they were not."

Violation of the DTPA necessarily entails a false, misleading or deceitful act. Tex. Bus. & Com. Code Ann. § 17.46(a). To that end, the jury specifically found that both Healthco and H.P.S.C. acted unconscionably. By contrast, breach of contract is the mere failure to do as one has agreed, perhaps despite the best of intentions and the most valiant of efforts. Because appellants' breaches of contract, on the facts of this case, could have occurred without any false, misleading or deceitful acts having been committed by them or their agents,

and because they could have violated the DTPA, on the facts of this case, without breaching their contracts, we find that the separate damages awards were not the result of the same acts or practices. *See Whirlpool Corp. v. Texical, Inc.,* 649 S.W.2d 55, 57 (Tex.Ct.App.—Corpus Christi 1982, no writ)(granting both recission of contract and DTPA damages); *Continental Savings Assoc. v. Maheney,* 641 S.W.2d 290, 292 (Tex.Ct.App.—Houston 1982, writ ref'd n.r.e.) (holding that breach of contract and DTPA theories are cumulative and not mutually exclusive).

Appellants disagree further with the $25,000 award from H.P.S.C., based on the jury's finding that H.P.S.C. violated the DTPA.[9] Appellants assert that there was not sufficient evidence to establish that H.P.S.C. had anything to do with anything other than financing for the third and fourth clinics. The short answer to appellants' argument is that while H.P.S.C. may not have been contractually involved with any other aspect of Cunningham's retail dentistry venture, the jury was certainly entitled to believe that H.P.S.C. made representations concerning those other aspects of the project. The jury found that Morsinkhoff was H.P.S.C.'s agent, capable of binding it to an agreement to provide financing. The record is replete with representations made by Morsinkhoff concerning the management system, the capabilities of the computer, the equipment, the leasehold improvements and floor plans. All of these subjects were related to H.P.S.C.'s contractual obligation because they constituted the reason that Cunningham sought financing in the first place. In its position as potential financier of two clinics and a division of the supplier of most of the equipment for those clinics, H.P.S.C. was in a position to make well-heeded representations about the goods and services provided by Healthco.

Having found that there is evidence to support a finding of H.P.S.C.'s violation of the DTPA by making representations concerning more than just the financing of the last two clinics, we turn to appellants' contention that recovery based on representations concerning that financing is barred by the statute of limitations. We find it unnecessary to address the limitations issue because of our previous conclusion that Dental Leasing was a debtor-in-possession at the time it filed its bankruptcy petition on February 24, 1983. The jury's findings regarding the statute of limitations did not establish that Dental Leasing knew of any claims against appellant before February 24, 1981, and we have already concluded that the evidence will not support a finding that Dental Leasing was barred because it knew or should have known of the claims by that date. The award of damages from H.P.S.C. under the DTPA is not precluded by the jury's findings or by the applicable statute of limitations.

### *Eighth Issue: Jury Instructions on Damages*

Appellants assert that the wording of the district court's instructions regarding damages fatally misled and confused the jurors. Although appellants did object in part to the instructions at trial, they did not address, and were capable of addressing, the complaints they now present. We cannot contemplate objections to jury instructions not presented below unless appellants can demonstrate that plain error occurred. *See Wells v. Hico Independent School Dist.,* 736 F.2d 243, 250 (5th Cir. 1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985), *citing Whiting v. Jackson State Univ.,* 616 F.2d 116, 126 (5th Cir.1980)("[W]e cannot consider [the objection] on appeal, Fed.R.Civ.P. 51, unless the error is so fundamental as to result in a miscarriage of justice."); *Liner*

---

**9.** The jury found that H.P.S.C. had (1) breached express or implied warranties by failing to create the dental clinic system it had promised; (2) represented that goods or services had sponsorship, approval, or affiliation which they did or do not have or caused confusion as to the actual source, sponsorship, or approval of goods or services; (3) represented that services to be provided in connection with the dental equipment

leases for the third and fourth clinics were or would be of a certain quality or quantity and they were not; (4) represented that the management control systems were of such quality and they were not; (5) represented that the computer system had qualities, characteristics, or uses which it did not have; and (6) engaged in an unconscionable action or course of action.

*v. J.B. Talley & Co.*, 618 F.2d 327, 329–30 (5th Cir.1980) ("If there is to be a plain error exception to [Fed.R.Civ.P.] 51 at all, it should be confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings.").

 Appellants do not present a case of plain error. The court's instructions regarding damages for misrepresentation did not fatally mix common law and DTPA claims. The need to separate common law from DTPA remedies stems from the fact that a plaintiff cannot recover under both the common law and the statute. The "fatal mixing" referred to by appellant can only occur if the jury finds liability on both theories, and here, the jury found no common law violation. Submitting potentially conflicting issues to a jury on alternative theories of recovery is not error because, until those issues are answered, no conflict can exist. *See Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 933 (Tex.Ct. App.—Houston 1982, writ ref'd n.r.e.) ("Thus, if the trial court erred, it was not in submission of the issues but in entry of the judgment allowing double recovery.").

Further, the district court did not charge the jury specifically to award damages for the breach of all three oral contracts if the jury found that any of the three had been breached. Since the jury instructions read as a whole clearly direct the jury to award damages, "if any," only where liability exists, the instruction to determine damages based on Healthco's failure to perform the "agreements regarding operational clinics, financing, and management systems" did not mandate a finding of damages for each of the three agreements. We find that no plain error occurred.

### Ninth Issue: Attorneys' Fees

Finally, we consider the award of $90,000 to Dental Leasing for attorneys' fees. Because we have reversed the award of damages to Dental Leasing concerning the written computer contract, and because the

award of attorneys' fees may include recovery for work performed in connection with that contract claim, we reverse the award of attorneys' fees and remand the case for a retrial on this issue. In view of the reversal, there is no need to address appellant's other objections to the award of attorneys' fees at this time.

### Conclusion

We affirm the following awards to Dental Leasing: $25,000 from Healthco for its breaches of contract, $35,000 from H.P.S.C. for its breach of contract, $77,000 from Healthco for its misrepresentations, and $27,000 from H.P.S.C. for its misrepresentations.[10] We reverse the award of $95,000 to Dental Leasing from Healthco for its breach of the written computer contract. The award of $90,000 to Dental Leasing from Healthco and H.P.S.C. for attorneys' fees is set aside and remanded for retrial.

AFFIRMED IN PART, REVERSED IN PART, AND REVERSED AND REMANDED.

---

**10.** The misrepresentation damage awards include $2,000 from each defendant, awarded pursuant to Tex.Bus. & Com. Code Ann. § 17.-

50(b)(1), which provides that "the court shall award two times that portion of the actual damages that does not exceed $1,000."