BOSTON HEATING COMPANY *vs.* MIDDLEBOROUGH SAVINGS BANK.

Suffolk. November 7, 1934. — November 27, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Contract*, Consideration. *Pledge. Frauds, Statute of.*

A forbearance, by the vendor of property under a contract of conditional sale, to remove the property from real estate after default under the contract by the vendee, upon a promise by a mortgagee of the real estate, who was proceeding with foreclosure, to pay the amount due on the contract if he became purchaser at the foreclosure sale, was a sufficient consideration for such promise.

Upon a meager record before this court upon an exception by the defendant to the denial of his motion that a verdict be ordered in his favor at the trial of an action for the amount of a balance remaining due to the plaintiff under the provisions of a contract of conditional sale of an oil burner and equipment installed upon real estate which the defendant, after making a special agreement with the plaintiff to pay the amount of such balance, had purchased at a foreclosure sale, there was evidence that previous to the defendant's promise and the commencement of the action, the plaintiff had assigned to a national bank all his right, title and interest in the oil burner and equipment and had indorsed and delivered to it the notes of the vendee covering instalment payments under the contract of conditional sale; and that, about three months after the action was brought, but before the trial, "the plaintiff paid the bank the balance due it and got back

the notes and contract with the assignment . . . marked 'cancelled.'"
*Held*, that

(1) Taking the evidence in its aspect most favorable to the plaintiff, the inference was permissible that the assignment to the national bank was by way of collateral security for an indebtedness;

(2) It further was inferable that after the assignment and at the time the action was brought the plaintiff had a beneficial interest in the property assigned which entitled him to enforce rights respecting it;

(3) The motion properly was denied.

Where a chose in action has been assigned as collateral security, the assignor may maintain an action in his own name, and if it is reassigned during the pendency of the action the assignor can prosecute the action for his own benefit. Per RUGG, C.J.

The express promise of the mortgagee to pay the balance due to the vendor under the contract of conditional sale in the circumstances above described was a primary obligation of the mortgagee to the vendor and was not within the statute of frauds.

CONTRACT. Writ dated January 15, 1932.

The action was tried in the Superior Court before *Gibbs*, J. Material evidence is described in the opinion. The only reference in the record to the assignment by the plaintiff to The National Shawmut Bank of Boston, referred to in the opinion, was as follows: "On September 15, 1931, the plaintiff, for value, assigned to The National Shawmut Bank of Boston all its right, title and interest in the oil burner and equipment referred to, by a writing on the reverse side of the contract mentioned, which was duly made and delivered by the plaintiff to said bank with which the plaintiff indorsed and delivered to said bank all of the notes referred to. This remained with the bank until April, 1932, when the plaintiff paid the bank the balance due it and got back the notes and contract with the assignment on reverse side marked 'cancelled.'"

At the close of the evidence, the defendant moved generally that a verdict be ordered in its favor. The motion was denied, subject to exception by the defendant. There was no other exception. There was a verdict for the plaintiff, returned on April 18, 1934, in the sum of $700.42.

The case was submitted on briefs.

*M. Jacobs*, for the defendant.

*M. J. Lipson & P. J. Aronson*, for the plaintiff.

RUGG, C.J.  The plaintiff seeks in this action of contract to recover a balance of $617.10 of the purchase price of an oil burner and equipment.  The plaintiff's evidence in substance was as follows: In May, 1931, the plaintiff entered into a written conditional sale contract with one Finkel under which the plaintiff installed in real estate owned by Finkel an oil burner and equipment.  Title thereto was to remain in the plaintiff as vendor until the purchase price of $685 plus interest on a series of notes given for the balance was fully paid, and upon failure to pay, the plaintiff reserved the right to remove the oil burner and equipment.  Finkel paid $50 when the contract was signed and later one of the notes, leaving an unpaid balance of $617.10.  In November, 1931, the defendant, being the holder of a first mortgage on the real estate, commenced foreclosure proceedings.  The plaintiff informed the defendant that unless it would pay the balance owed on the oil burner it would be removed.  The defendant asked the plaintiff to wait until after the foreclosure sale, and promised that if the defendant should become the purchaser at such sale it would pay the balance owed to the plaintiff.  The defendant did become the purchaser at the foreclosure sale, and on November 28, 1931, wrote the plaintiff that it was "prepared to pay the balance on the oil burner."  On September 15, 1931, the plaintiff for value assigned to The National Shawmut Bank of Boston all its right, title and interest in the oil burner and equipment, by a writing on the reverse side of the written contract mentioned, which was duly made and delivered by the plaintiff to The National Shawmut Bank of Boston with all of the notes referred to duly indorsed.  These remained with the bank until April, 1932, when the plaintiff paid the bank the balance due it and received the notes and the contract with the assignment on the reverse side marked "cancelled."

A written motion for a directed verdict in favor of the defendant was denied subject to its exception.  A verdict was returned for the plaintiff.  The exceptions state that this is all the evidence material to the question raised.  The pleadings are made a part of the exceptions.  The first count

in the plaintiff's declaration was on the special contract which alleged, among other matters, that when the defendant was about to foreclose its mortgage there was a default in the payments due the plaintiff on the oil burner and equipment. The second count is on an account annexed for goods sold and delivered. It appears that the writ was dated on the fifteenth of January, 1932.

The record is extremely bare. That any of the series of notes given to the plaintiff for the purchase price of the property was overdue at the time foreclosure proceedings were instituted is not expressly supported by any direct evidence. The allegation of the declaration is specific on this point, however. The inference is possible that, because the defendant assented to the demand of the plaintiff to pay the balance due and requested it to wait, the trial proceeded without objection on the theory that a default had already arisen. If that were found to be so, the forbearance of the plaintiff to remove the property upon the promise by the defendant to pay for it on condition that it became the purchaser at the foreclosure sale was a sufficient consideration for that promise.

There is no direct evidence to the effect that the assignment to The National Shawmut Bank of Boston was as collateral security for an indebtedness to the bank. It is stated, however, that the oil burner and equipment were assigned to the bank and that the contract and the notes were returned to the plaintiff when it "paid the bank the balance due it." This warrants the inference that the burner and equipment were not sold to the national bank. In the context the statement that the plaintiff assigned its right, title and interest in the oil burner and equipment to The National Shawmut Bank of Boston does not import a sale. In the ordinary course of business a national bank would not buy an oil burner situated on the property of a third person. *Concord First National Bank* v. *Hawkins*, 174 U. S. 364, 367. *Chase National Bank of New York* v. *Spokane County*, 125 Wash. 1, 11. Its normal course of business would be at most to accept an assignment of the interest of the owner in it as collateral security for

an indebtedness.   Taking the evidence in its aspect most favorable to the plaintiff, the inference is permissible that the assignment of the property and notes to the national bank was by way of collateral security for an indebtedness.   Where a chose in action has been assigned as collateral security, the assignor may maintain an action in his own name, and if it is reassigned during the pendency of the action the assignor can prosecute the action for his own benefit. *Moore* v. *Spiegel,* 143 Mass. 413, 417.   It is inferable also that the plaintiff had a beneficial interest in the chose in action because the property was returned to it upon payment of the debt to the bank.   *Rogers* v. *Murch,* 253 Mass. 467, 470, 471.   *Dolben* v. *Duncan Construction Co.* 276 Mass. 242, 252.   In those circumstances the plaintiff as assignor, having retained a beneficial interest, had a right to enforce rights respecting it.   *Taft* v. *Church,* 162 Mass. 527, 532.   *McKie* v. *Gregory,* 175 Mass. 505, 507, 508.   The forbearance by the plaintiff to repossess itself of the property pending the foreclosure was sufficient consideration for the promise of the defendant to pay for it.   Under such conditions the promise was not within the statute of frauds but became a primary obligation of the defendant to the plaintiff.   *Fears* v. *Story,* 131 Mass. 47.

*Exceptions overruled.*