GENESCO, INC. *vs.* MANUEL M. KOUFMAN & others.[1] April 6, 1981. This case grows out of a bill for declaratory and other relief filed by Genesco, Inc. (Genesco), on August 31, 1970. From the pleadings and documents filed at various times in the course of these protracted proceedings, the following paragraphs (numbered to facilitate cross references) state relevant facts which appear to have been established.

1. On May 24, 1962, Kleven Shoe Sales Co., Inc. (Kleven), to which Genesco is a successor, leased from Koufman (for a term of twenty-five years) land in North Brookfield on which Koufman undertook to erect a building for Kleven. On July 25, 1962, Koufman assigned the lease (hereafter the 1962 lease) to the National Shawmut Bank of Boston, as security for a first mortgage on the North Brookfield property. The bank, on December 10, 1962, assigned the mortgage and the 1962 lease to the Prudential Insurance Company (Prudential, see n.1). On November 26, 1963, Koufman conveyed his interest in the North Brookfield property and in the 1962 lease to Northeast Properties, Inc. (Northeast), of which he was president and treasurer. On April 7, 1969, Northeast assigned its interest in the 1962 lease to Atlas Capital Corporation (Atlas)

---

[1] Northeast Properties, Inc., The Prudential Insurance Company of America, Atlas Capital Corporation, and a large number of insurance companies (doing business as the Factory Insurance Association).

to secure a second mortgage of that date. In the event of a default on the second mortgage, Atlas was given broad power to operate and repair the leased property from the rents. The building on the premises had been completed about December 10, 1962.

2. Genesco claims that, prior to November 8, 1963, and continuing through 1969, the roof, outside walls, and foundations of the new building deteriorated. Notice of the need of repairs was given to Koufman on August 1, 1968, and at various times thereafter. Despite the provisions of the 1962 lease requiring essentially that the lessor make structural repairs, Koufman and Northeast failed to make the repairs. Genesco notified Koufman and Northeast that, if the repairs were not made, Genesco would make them and seek reimbursement from Koufman. Genesco then hired its own contractor and the repairs were made at a cost of $17,879.99. Genesco demanded reimbursement, which Koufman refused. By March 25, 1971, Genesco's expenditures for repairs had risen to $39,250.64.

3. Genesco then filed (August 31, 1970) the proceeding, already mentioned, seeking among other things (a) to have Koufman or Northeast ordered to reimburse Genesco for the repairs and to make other repairs, and (b) permission to withhold rent until a sufficient sum had been accumulated to cover the repair costs.

4. In April, 1969, almost immediately after Atlas had received its second mortgage on the North Brookfield property and the assignment (subject to Prudential's prior security interest) of the lessor's interest in the 1962 lease, Atlas gave notice to Kleven and Genesco (assented to by Northeast and Koufman) that "all rents and other payments" under the 1962 lease were to be paid to Atlas. Pursuant to this notice, Genesco, until March, 1971, paid its rent of $10,500 a month to Atlas. From April to November, 1971, Genesco (claiming that it had been constructively evicted by reason of the want of repair) did withhold $2,200 from each monthly rent payment. It continued, however, to send to Atlas $8,300 each month "for use and occupancy," to be transmitted to Prudential as first mortgagee.

5. Atlas, under its second mortgage note, dated April 7, 1969, and due in five years, was entitled to be paid by Northeast $2,209.80 in each month except April. In April of 1970-1973, Atlas (each year) was to be paid $10,792.20, apparently made up of the regular monthly payment of $2,209.80 plus $8,582.40 as a special annual "balloon" payment. Because the total monthly rent paid by Genesco to Atlas was only $10,500 (of which about $8,300 was paid by Atlas to Prudential on the first mortgage), to meet the April balloon payment of $8,582.40 each year, Northeast (or Koufman) obviously would have to pay that sum to Atlas from sources other than the rent.

6. Atlas did not receive its April, 1970, "balloon" payment, but made then no effort to foreclose its second mortgage on the North Brookfield

property while it was still receiving its share ($2,209.80) of the basic monthly rental. In April, 1971, however, Genesco began to withhold $2,200 from its monthly payments of rent. On July 19, 1971, Atlas made entry as a step in foreclosing its second mortgage. At the foreclosure sale, Atlas bought in the North Brookfield property for $25,000. At some time Genesco did move out of the North Brookfield property claiming constructive eviction, and later did sublease the property.

7. On November 20, 1972, Genesco, Atlas, and Prudential made a settlement of controversies which had arisen among them. It was agreed, among other matters, (1) that prior to March 21, 1971, Genesco had spent $39,250.64 for repairs to the building, (2) that Genesco would waive all claims of constructive eviction, and (3) that Genesco would assign to Atlas "all of its right, title, and interest in all claims which it has against . . . Koufman and/or [sic] Northeast . . . on account of all matters alleged" in the present case. This assignment was made on November 20, 1972. On November 28, 1972, Genesco sent to Atlas a check for the balance ($4,749.36) of the withheld rents above the repair cost ($39,250.64).

8. Koufman and Northeast on December 18, 1970, filed answers denying liability essentially on the grounds (1) that blasting near the property by the town of North Brookfield had caused the damages which necessitated repairs, and (2) that Genesco and its insurers should assume responsibility for these. Northeast also included a counterclaim asserting that Genesco was liable to it for damage to the building. The case thereafter lay dormant until September 30, 1976, when it was dismissed with prejudice for want of prosecution. Upon Northeast's motion, the judgment of dismissal was vacated on October 25, 1976. Northeast then obtained leave on March 7, 1977, to add two counterclaims (a) for the rent withheld on and after April, 1971, and (b) for the loss of Northeast's equity because of Atlas's foreclosure. Genesco at the same time was allowed to amend its complaint to assert (against Koufman) claims for breach of warranty, and (against both Koufman and Northeast) claims for negligent design and construction. A further motion to amend their answer and counterclaims was filed by Northeast and Koufman on November 28, 1978, after the case had been placed on the trial list on several occasions. The proposed further amendment would have alleged in effect that Genesco, knowing of the terms of both mortgages, withheld rent to induce one or both mortgagees to foreclose. This conduct was asserted to be an intentional interference with contractual relations. This motion to amend was denied on March 23, 1979.

9. Motions for summary judgment (by Koufman and Northeast) on the amended Genesco complaint against them, and (by Genesco) on the amended counterclaims against it were considered by a master. His report, filed May 30, 1979, recommended that each motion for summary judgment be granted. Judgment, in accordance with the master's report, was entered on June 27, 1979. By stipulation, all claims against the in-

surance companies (see note 1, *supra*) and against Atlas were dismissed with prejudice. Genesco, Koufman, and Northeast appealed.

10. The judge (accepting the master's report) correctly concluded that summary judgment should be granted for Koufman and Northeast, on Genesco's claims against them, on the ground that Genesco (see par. 7, *supra*) had assigned these claims to Atlas in Genesco's settlement with Atlas and Prudential. We, like the master, interpret the assignment by Genesco to Atlas as encompassing broadly "all of its [Genesco's] right, title, and interest in *all claims* which it has" (emphasis supplied) against Koufman and Northeast in the then pending case whether then or later asserted. This interpretation is consistent with (a) the waiver by Genesco in the settlement agreement of all claims by it of constructive eviction, (b) with the acquiescence of Atlas and Prudential in reimbursing Genesco from the withheld rents for the cost of the comprehensive repairs paid for by it, and (c) with Genesco's own action in requesting, by its letter to Atlas of September 25, 1978, a reassignment to it (Genesco) of these claims. We hold that Genesco, by its broad assignment of the claims which it had in connection with the 1962 lease, parted with those claims whether then already asserted in this proceeding or thereafter asserted. Genesco no longer owns the claims against Koufman and Northeast which it now seeks to assert.

11. The master concluded properly that Genesco was entitled to summary judgment in its favor on the counterclaims by Northeast against Genesco (a) for rent unpaid from March to November, 1971, and (b) for consequential damages for loss of Northeast's equity in the North Brookfield property alleged by Northeast to have resulted from Genesco's nonpayment of part of that rent. When Genesco withheld part of the rent in 1971, Atlas had an absolute right to that rent by virtue of Northeast's second mortgage to Atlas, its assignment of the lease to secure the mortgage, and its agreement that Atlas could collect the rents directly from Genesco. See par. 4 above. After Northeast's default on the balloon payment in April, 1970 (see par. 6, *supra*), Atlas under the lease assignment (assented to by Koufman) was given ample authority to apply rents for repairs. The settlement was in effect an exercise of this authority. Thus, Northeast has no claim against Genesco for the rents paid or reserved by it.

12. Northeast was not forced to its default on the second mortgage by Genesco's nonpayment of rent. The rent due, if paid in full, would not have been sufficient to meet the aggregate monthly payments on the first and second mortgages and also the April "balloon" payments on the second mortgage (see pars. 5-6, *supra*). As already has been indicated, Northeast would have been obliged to provide funds significantly in excess of the unpaid rent to meet each of the balloon payments and did not do so. Thus, Genesco's nonpayment of rent could not have been the proximate cause of Northeast's default on, and Atlas's foreclosure of, the second

mortgage. We need not consider another ground, considered by the master, for summary judgment for Genesco on Northeast's counterclaim for loss of equity, viz. that consequential damages for possible loss of equity were not reasonably within the contemplation of the parties when the lease was executed in 1962. We note, however, that there was then no second mortgage (and, indeed, none was arranged until 1969, see par. 1, *supra*).

13. A motion for judgment on the pleadings was filed by Genesco on February 25, 1977, with respect to Northeast's then pending counterclaim. Treated as a motion for summary judgment, this motion was denied by a Superior Court judge (the motion judge) on September 7, 1977. Northeast contends that this denial now constitutes a barrier to a summary judgment in favor of Genesco on Northeast's counterclaims. The short answer to this contention (essentially that the motion judge's ruling is now "the law of the case") is that any Superior Court judge, prior to final judgment, possessed the power (although perhaps he was not required to exercise it) to modify earlier orders of another judge. See *Gleason* v. *Hardware Mut. Cas. Co.*, 331 Mass. 703, 710 (1954); *New Bedford* v. *Lloyd Inv. Assoc.*, 363 Mass. 112, 116 n.6 (1973). See also *Peterson* v. *Hopson*, 306 Mass. 597, 599-605 (1940).

14. It was within the discretion of a Superior Court judge to deny on March 23, 1979, Northeast's motion filed November 28, 1978, to add a fourth counterclaim despite the general practice under Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974), of liberal granting of amendments. The case by then was an old one which, at its early stages, had been inactive for a considerable period. When reopened by Northeast in October, 1976, it was six years old. Before the motion was denied, the case had been on the trial list and had been rescheduled on numerous occasions. Substantial amendments had been allowed to both parties in March, 1977. See par. 8, *supra*. The reasons for the denial of the motion to amend are apparent from the history of the case. It would have introduced at a late stage in the litigation a substantially different claim from those theretofore asserted, which might well require further delay for discovery. See *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 291-293 (1977). Compare *Evans Prod. Co.* v. *D.J. Dev. Corp.*, 6 Mass. App. Ct. 306, 309 (1978).

15. The action of the trial judge in accepting the recommendations of the master was proper. Summary judgment was properly entered for Genesco on Northeast's amended counterclaims for rent and lost equity and for Northeast and Koufman on Genesco's amended complaint.

*Judgment affirmed.*

*William H. Baker* for the plaintiff.
*Richard M. Zinner* for the defendants.