**MHI SHIPBUILDING, LLC and
MMBC Debt Holdings I,
LLC, Plaintiffs,**

v.

**NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD,
Defendant.**

No. CIV.A. 02–10413–WGY.

United States District Court,
D. Massachusetts.

Oct. 7, 2002.

18

Timothy D. Jaroch, Wellesley Hills, MA, for MHI Shipbuilding LLC.

W. Mark Russo, Ferrucci & Russo, PC, Providence, RI, for National Fire Insurance Company of Hartford.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

In this diversity action, the Plaintiff, MHI Shipbuilding, LLC ("MHI"), asserts that the Defendant, National Fire Insurance Company of Hartford ("National Fire"), refused to pay money allegedly owed MHI on a surety bond. As a result, MHI defaulted on loans guaranteed by the federal government and thus entered Chapter 11 bankruptcy. MHI asserts a breach of contract claim (Count I) and an unfair or deceptive practices claim pursuant to Massachusetts General Laws Chapter 93A (Count II).

National Fire moves to dismiss the action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). First, it argues that the statute of limitations on MHI's claims has expired. The resolution of this issue hinges on whether Section 108(a) of the United States Bankruptcy Code, 11 U.S.C. § 108(a), which extends the limitations period for certain suits brought by bankrupt parties, applies to this case. This, in turn, raises the question whether Section 108(a) can be utilized by Chapter 11 debtors in possession (like MHI) as well as trustees.

National Fire also argues that MHI lacks standing and is not the real party in

interest to bring this action under Federal Rule of Civil Procedure 17(a) because it completely assigned its rights under the surety bond to the federal government. The key to resolving this issue lies in determining whether MHI's assignment was collateral or total, and whether, if collateral, a collateral assignor can sue under Massachusetts law.

## II. BACKGROUND

### A. Facts

Pursuant to a national policy favoring shipyard revitalization, the Commonwealth of Massachusetts selected Massachusetts Heavy Industries, Inc. ("Heavy Industries"), a corporation wholly owned by Sotiris G. Emmanuel ("Emmanuel"), to revitalize the Fore River Shipyard, located in Quincy and Braintree, Massachusetts. Compl. ¶ 6. Heavy Industries purchased most of Fore River Shipyard from the Massachusetts Water Resources Authority in May 1997. *Id.* ¶ 8. Emmanuel formed a second corporation, MHI, in 1997, to implement the revitalization project. *Id.* ¶ 10. In order to fund the project, MHI obtained a $55,000,000.00 loan from Fleet Bank, which was guaranteed by the federal government under a program administered by the United States Maritime Administration (the "Maritime Administration"). *Id.* ¶ 11. The parties closed the Fleet Bank loan on December 17, 1997. *Id.* MHI signed a security agreement (the "Security Agreement") granting a security interest in many of its assets to the federal government, as a condition of the government's guaranty of the Fleet Bank loan. Def.'s Mem. ex. A.

On November 24, 1997, MHI entered into a contract (the "Construction Contract") with O. Ahlborg & Sons ("Ahl-

borg"), whereby Ahlborg was to perform substantially all of the revitalization work on the site. Compl. ¶ 12. Ahlborg's full performance under the Construction Contract was bonded by National Fire, as surety, through a bond issued on March 4, 1998 (the "Surety Bond"). *Id.* ¶ 14. The Surety Bond stated that any disputes regarding the bond would be governed by Massachusetts law and that a two-year limitations period for filing "any proceeding, legal or equitable . . . in any court of competent jurisdiction" would apply. Compl. Ex. A, ¶ 9.

MHI alleges that in 1999, Ahlborg materially breached the Construction Contract by failing substantially to complete construction. Compl. ¶ 28. On August 30, 1999, MHI gave notice to Ahlborg that the Construction Contract was terminated. *Id.* ¶ 32. The Maritime Administration then informed National Fire that, because of Ahlborg's default, National Fire had an obligation to pay the proceeds of the Surety Bond. *Id.* National Fire refused to pay, giving rise to the current litigation. *Id.* ¶ 35.

On October 7, 1999, the Maritime Administration sent National Fire a letter notifying National Fire that the Maritime Administration had "authorized MHI . . ., at such time as it deems appropriate, to bring legal action in its own name against [National Fire] to enforce the terms and conditions of the [Surety Bond]." Pl.'s Opp'n Ex. A. The letter stated that this authorization was subject to Article Sixth, Section (m) of the Security Agreement,[1] including the Maritime Administration's right to withdraw this authorization at any time and to settle any litigation brought by MHI. *Id.* Also, the letter noted that the Maritime Administration remained the only entity allowed to negotiate with Na-

---

1. Section (m) is discussed extensively *infra* part IV(B). In short, Section (m) permits the

Maritime Administration to control settlement and litigation, should it so desire.

tional Fire relative to the claims under the Surety Bond. *Id.*

MHI defaulted on the Fleet Bank loan, and Fleet Bank called in the United States guarantee of the Fleet Bank loan in February 2000. Compl. ¶ 38. As a result, the Maritime Administration took possession of Fore River Shipyard. *Id.* MHI filed for Chapter 11 bankruptcy as a debtor in possession on March 13, 2000. *Id.* There is no indication that a trustee was ever appointed in MHI's bankruptcy case. On April 12, 2000, one month after MHI filed its Chapter 11 petition, the bankruptcy court issued an order granting the Maritime Administration "relief from the automatic stay to exercise its contractual right to remain as mortgagee in possession of the property." Def.'s Reply Ex. B, at 2. For example, the Maritime Administration was allowed to examine the shipyard's books. In return for allowing it to exercise these rights, the bankruptcy court required the Maritime Administration to "exercise custodial control over the Shipyard in a reasonable manner." *Id.* MHI filed this action against National Fire on March 8, 2002. MHI's Chapter 11 case was dismissed on March 20, 2002.

### B. Procedural Posture

Three days after MHI filed this suit, MMBC Debt Holdings I, LLC ("MMBC"), which held a security interest in MHI's claims against National Fire, foreclosed on MHI's claims by a public auction held on March 11, 2002. MMBC's Mot. for Substitution or Joinder, at 3. MMBC, as sole bidder, purchased the claims at the auction. *Id.* On June 17, 2002, this Court joined MMBC as an additional plaintiff.

National Fire has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The motion to dismiss raises two issues. First,

has the statute of limitations run on MHI's claims under the bond? Second, does MHI lack standing to file suit under the Surety Bond because Section (m) of the Security Agreement represented a total assignment of its rights under the bond?

### III. DISCUSSION

#### A. Standard of Review

■ For purposes of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must accept all facts in the complaint as true, grant all reasonable inferences from those facts in favor of the nonmovant, and decide whether a viable cause of action exists. *Alternative Energy v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). Ordinarily, a court may not consider material beyond that found in the complaint itself when adjudicating a 12(b)(6) motion, unless the motion is converted into one for summary judgment. *Id.* A "narrow exception" exists "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993).

■ These exceptions are crucial to the adjudication of this motion, because both sides have submitted documents that are not found directly within the four corners of the complaint. National Fire submitted a December 17, 1997, Security Agreement between MHI and the Maritime Administration and the April 12, 2000, bankruptcy court order allowing the Maritime Administration to continue acting as mortgagee in possession, while MHI submitted the October 7, 1999, letter from the Maritime Administration to MHI authorizing MHI to sue on the Surety Bond. Neither side has disputed the authenticity

of any of these three documents; thus, the court will consider them in this motion to dismiss. *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998). Further, although the Security Agreement as a whole is not appended to the complaint or incorporated within it, its key section for purposes of this motion (Section (m)) is quoted at length within one of the complaint's exhibits and therefore may be considered. Compl. Ex. D, at 1. The bankruptcy court order is a matter of public record. Finally, the letter from the Maritime Administration to MHI is central to MHI's claims. The primary reason for not considering documents outside the complaint is to protect the plaintiff from unfair surprise, *Watterson*, 987 F.2d at 4 (citing *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)), and therefore the need for the rule is greatly reduced when it is the plaintiff (and not the defendant) who seeks to introduce additional documents. Thus, all three documents (the Security Agreement, court order, and letter) will be considered without converting National Fire's motion to dismiss into a motion for summary judgment.

### B. Statute of Limitations

National Fire argues that the statute of limitations on MHI's claims, specifically the two-year limitations period found within the Surety Bonds themselves, had expired on the date this action was filed and thus it must be dismissed.[2] Section 108(a) of the United States Bankruptcy Code, 11 U.S.C. § 108(a), extends the limitations period for bankrupt parties under certain circumstances. Section 108(a) reads:

If applicable nonbankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

11 U.S.C. § 108(a).

It is undisputed that if Section 108(a)'s extension does not apply, then MHI's present action is time-barred. The limitations period began to run, at the latest, on August 30, 1999 (when Ahlborg was notified that the Construction Contract was terminated), and thus ordinarily would have expired no later than August 30, 2001. MHI did not file suit until March 8, 2002. If, however, Section 108(a) does apply to this case, the action is not time-barred. The two-year limitations period on MHI's claims had not expired at the time MHI filed for bankruptcy on March 13, 2000 (less than seven months after it informed Ahlborg that the Construction Contract was terminated). Thus, MHI would be permitted by the terms of Section 108(a) to file suit within two years of the "order for relief." 11 U.S.C. § 108(a). In a Chapter 11 case, the order for relief is the "commencement of a voluntary case," which in turn is the filing with the bankruptcy court of the petition by the debtor. 11 U.S.C. § 301; *Tibbetts v. Eckert Seamans Cherin & Mellott*, 272 B.R. 448, 450 (W.D.Pa. 2001). The order for relief in MHI's bankruptcy case occurred on March 13, 2000, the date that MHI filed its Chapter 11

---

**2.** If MHI's claim were to be dismissed because the statute of limitations had expired, MMBC's claim would also need to be dismissed. As MMBC acquired the claim at the foreclosure sale—after the commencement of the action—it would already have expired by the time MMBC acquired the claim.

petition. As a result, MHI would have until March 13, 2002 to file this action, and it was filed before that date, on March 8, 2002.

The only disputed issue is whether Section 108(a) applies to MHI's claims. National Fire offers three reasons why Section 108(a) should not apply to this case. First, it argues that by the provision's own language, Section 108(a) only applies to trustees, and not to Chapter 11 debtors in possession like MHI. Second, it argues that even if Section 108(a) does apply to Chapter 11 debtors in possession, MHI was not a debtor in possession when this suit was filed because the Maritime Administration had previously been given leave by a bankruptcy court to exercise its contractual rights as mortgagee in possession. This order, National Fire contends, ousted MHI from debtor in possession status. Third, National Fire argues that Section 108(a) applies only to limitations periods set by statute, and not to contractual limitations periods like the one involved in this case.

### 1. Section 108(a) and Debtors in Possession

■ National Fire argues that Section 108(a)'s extension of time is available only to bankruptcy trustees, and not to Chapter 11 debtors in possession like MHI. The First Circuit has not spoken on this issue, and there is a split of authority among the courts that have considered it. Most courts have held that Section 108 applies to debtors in possession as well as to trustees. *E.g., Roberts v. C.I.R.,* 175 F.3d 889, 898 n. 10 (11th Cir.1999); *Autoskill, Inc. v. National Educ. Support Sys., Inc.,* 994 F.2d 1476, 1484 n. 4 (10th Cir.1993); *Coliseum Cartage Co. v. Rubbermaid Statesville, Inc.,* 975 F.2d 1022, 1025 (4th Cir.

1992); *United States for Use of Am. Bank v. C.I.T. Constr., Inc.,* 944 F.2d 253, 259–60 (5th Cir.1991); *Seawinds Ltd. v. Nedlloyd Lines, B.V.,* 80 B.R. 181, 187 (N.D.Cal. 1987), *aff'd,* 846 F.2d 586 (9th Cir.1988); *Johnson v. First Nat. Bank of Montevideo,* 719 F.2d 270, 278 n. 11 (8th Cir.1983); *In re Mi–Lor Corp.,* 233 B.R. 608, 613 (Bankr.D.Mass.1999) (Queenan, B.J.). Two courts, however, have held that Section 108 applies only to trustees and not to debtors, without making a distinction between mere debtors (in a bankruptcy case where a trustee has been appointed) and Chapter 11 debtors in possession. *In re Dohm,* 14 B.R. 701, 702 (Bankr.N.D.Ill. 1981); *In re Craig,* 7 B.R. 864, 865 (Bankr. E.D.Tenn.1980).[3]

The reasoning of those courts that have interpreted Section 108 to apply to Chapter 11 debtors in possession is persuasive. It is true that the language of Section 108 mentions only trustees as being able to take advantage of the limitations extension; Chapter 11 debtors in possession are not explicitly named within the provision. *See Craig,* 7 B.R. at 865. Section 108, however, must be read in conjunction with Section 1107(a), which states that except for a few situations that are not relevant here, "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under [Chapter 11]." 11 U.S.C. § 1107(a). Thus, the Chapter 11 debtor in possession is given equal powers to those of a trustee, presumably including the right to take advantage of the Section 108(a) extension of time.

The purpose of the Chapter 11 bankruptcy scheme giving debtors in possession equivalent powers to trustees is to give an

---

**3.** The facts of *Craig* involve a Chapter 13 case in which a trustee had been appointed. 7

B.R. at 865. The *Dohm* court does not state whether or not a trustee was involved.

individual who has a fiduciary relationship to the creditors substantial powers to preserve and maximize the value of the bankrupt estate, without incurring the expense and complexity of appointing a trustee. *See Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *Wolf v. Weinstein*, 372 U.S. 633, 649, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963). If a trustee is appointed, the trustee will fulfill this preservation function, but if no trustee is appointed, the debtor itself, serving now as debtor in possession, must substitute for the trustee as the preserver of the bankrupt estate and assume the same fiduciary relationship. *See Weintraub*, 471 U.S. at 352–55, 105 S.Ct. 1986; *Wolf*, 372 U.S. at 649, 83 S.Ct. 969; *In re DN Assocs.*, 3 F.3d 512, 514 (1st Cir.1993); *In re Energy Resources Co.*, 871 F.2d 223, 229 (1st Cir. 1989); *In re Water's Edge Ltd. P'ship*, 251 B.R. 1, 6–7 (Bankr.D.Mass.2000) (Queenan, B.J.).

If the Chapter 11 debtor in possession assumes the trustee's role, she should also assume the powers that the trustee finds necessary or helpful to carry out that role. The Section 108(a) extension of time is an important tool for the preservation of the bankrupt estate: it gives the preserver extra time to discover and prosecute claims that will benefit the interests of the bankrupt estate, particularly the interests of the creditors. *See United States ex. rel. Am. Bank*, 944 F.2d at 260; *Seawinds Ltd.*, 80 B.R. at 188; *Natco Indus., Inc. v. Fed. Ins. Co.*, 69 B.R. 418, 419 (S.D.N.Y. 1987). Thus, a Chapter 11 debtor in possession, like a trustee, should be able to take advantage of Section 108(a)'s extension.

Moreover, to hold otherwise and create a discrepancy in power between the trustee and the debtor in possession would increase the costs of administering bankrupt estates. Such a holding would encourage creditors to push for the appointment of trustees in more Chapter 11 cases. Trustees would be appointed in cases where they would not otherwise be necessary simply because creditors would want the estate to have the ability to prosecute claims nearing expiration. Yet the appointment of trustees is costly; the trustees receive compensation from the bankrupt's estate, leaving less money for the estate and ultimately the creditors. The purpose of Section 108(a) is to allow the estate to amass more money through prosecution of old claims, primarily for the benefit of the creditors; this Court will not sanction an interpretation of Section 108(a) that cuts against such an outcome.

There are no persuasive policy reasons favoring the exclusion of Chapter 11 debtors in possession from the benefits of Section 108(a). The *Dohm* court noted that conflicts between trustees and debtors could arise if Section 108(a) were available to both. *Dohm*, 14 B.R. at 702. This argument is a forceful reason not to apply Section 108 to mere debtors, as opposed to debtors in possession. Indeed, based primarily on the fact that a mere debtor lacks the same fiduciary relationship and preserver role as a trustee or debtor in possession, courts have unanimously held that Section 108 does not apply to mere debtors. *E.g., Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1460 (5th Cir.1987); *Natco Indus. Inc.*, 69 B.R. at 419–20. Yet this argument has no force with respect to Chapter 11 debtors in possession, because in cases where there is a debtor in possession, by definition no trustee has been appointed and thus there is no potential for conflict. *See* 11 U.S.C. § 1101(1). Moreover, the debtor in possession is subjected to the same fiduciary duties towards creditors and shareholders as is a trustee. The Court holds that Section 108(a) ap-

plies to Chapter 11 debtors in possession as well as trustees.

### 2. Debtors in Possession and Mortgagees in Possession

■ National Fire's second argument against applying Section 108(a) to this case is that even if Section 108 applies to Chapter 11 debtors in possession, MHI was not a debtor in possession, but rather a mere debtor at the time the present case was filed because the bankruptcy court had already appointed the Maritime Administration mortgagee in possession. In order to take advantage of the time extension listed in Section 108(a), MHI must have retained its debtor in possession status on March 12, 2002, when the present action was filed. *See Cunningham,* 824 F.2d at 1460 (5th Cir.1987); *Natco Indus., Inc.,* 69 B.R. at 419–20.

National Fire argues that although a trustee was never appointed in MHI's Chapter 11 bankruptcy case, MHI was not a debtor in possession after April 12, 2000, the date that the bankruptcy court exercised its powers to grant the Maritime Administration "relief from the automatic stay to exercise its contractual right to remain as mortgagee-in-possession of the property," subject to various conditions. Def.'s Reply Ex. B, at 2. National Fire contends that the bankruptcy court used its discretionary powers under Section 105(a) of the United States Bankruptcy Code to appoint the Maritime Administration mortgagee in possession, *see* 11 U.S.C. § 105(a),[4] and that this appointment carried with it the powers and responsibilities typically held by a trustee or debtor in possession. Thus, the Maritime Administration took over the estate preservation

role, ousting MHI from debtor in possession status.

■■ This argument has no merit. It overlooks Bankruptcy Code Section 1101(1), which states that for the purpose of Chapter 11 bankruptcy cases, " 'debtor in possession' means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case." 11 U.S.C. § 1101(1). Thus, "the debtor automatically becomes a debtor in possession" when a Chapter 11 bankruptcy case commences, and retains debtor in possession status "until such time, if any, as the court orders the appointment of a chapter 11 trustee ...." 7 *Collier on Bankruptcy* ¶ 1101.01[2] (Lawrence P. King et al. eds., rev. 15th ed.2002); *see also Abbott v. Blackwelder Furniture Co. of Statesville, Inc.,* 33 B.R. 399, 401 (D.C.N.C.1983) (holding that because no trustee was appointed in a Chapter 11 case, during the course of the case a debtor was a debtor in possession "by statutory definition."). As far as is indicated on the record, no trustee was appointed in MHI's bankruptcy case; thus, MHI must have retained debtor in possession status throughout the case. National Fire suggests that the bankruptcy judge circumvented the mandate of Section 1101(1) by using the bankruptcy court's equitable powers under Section 105(a). Section 105(a) is never mentioned in the bankruptcy court's order. *See* Def.'s Reply Ex. B. More importantly, a bankruptcy court cannot use its discretionary powers under Section 105(a) to achieve a result that is inconsistent with a more particularized Bankruptcy Code provision. *In re Ludlow Hosp. Soc., Inc.,* 124 F.3d 22, 28 (1st Cir. 1997). Even if the bankruptcy court had intended to oust MHI from debtor in pos-

---

4. Section 105(a) states in part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title ...." 11 U.S.C. § 105(a).

session status by using Section 105(a) to appoint the Maritime Administration mortgagee in possession (and there is no indication that it had any such intention), it could not do so because its action would conflict with Section 1101(1). Section 105(a), then, does not alter the Court's holding that the bankruptcy order appointing the government mortgagee in possession did not remove MHI from debtor in possession status.

This holding is sensible if one considers the purpose of the bankruptcy system. As noted above, a trustee, or Chapter 11 debtor in possession if there is no trustee, is designated by the bankruptcy court and charged by it with preserving the entire bankruptcy estate for the creditors. A mortgagee in possession, by contrast, is not created by the bankruptcy court, but by contract: it is defined as simply a mortgagee that takes possession of property of the debtor pursuant to its rights under a security agreement. *Black's Law Dictionary* 1030 (7th ed.1999). The concept of mortgagee in possession is never mentioned within the Bankruptcy Code. A mortgagee in possession will not generally have the same fiduciary obligations to other creditors as a debtor in possession or trustee; even though, as here, a bankruptcy court may impose some obligations on the mortgagee in possession to protect the property in return for allowing it to exercise its contractual rights during the bankruptcy litigation. Also, a mortgagee in possession will generally take possession of only certain assets within an estate (those for which she has a security interest), and not the entire estate. Thus, even if she had the appropriate fiduciary obli-

gations, the mortgagee in possession would be capable of acting to preserve only certain parts of the estate and not the entire estate. In short, a mortgagee in possession is not an adequate substitute for the Chapter 11 trustee or debtor in possession role.

■ As the Maritime Administration's status as mortgagee in possession did not oust MHI from its debtor in possession role, MHI was still a debtor in possession at the time this action was filed. A debtor in possession generally reverts back to being a mere debtor after "the pendency of the bankruptcy proceeding" has ended, and once this reversion occurs, the debtor can no longer take advantage of the statute of limitations extension. *Natco Indus., Inc.*, 69 B.R. at 419; *see* 7 *Collier on Bankruptcy, supra*, ¶ 1101.01[2][b] ("If no trustee is appointed in the chapter 11 case, the debtor's tenure as debtor in possession will continue until the case is converted or dismissed or a plan is confirmed.").[5] Here, MHI's Chapter 11 action was not dismissed until March 20, 2002, eight days after the suit against National Fire was filed. Thus, MHI was still a debtor in possession at the time the present suit was filed.

### 3. Section 108(a) and Contractual Limitations Periods

■ National Fire's final argument against applying Section 108(a) to the current case is that the two-year limitations period referenced in the Surety Bond is contractual (in that it is found within the Surety Bond itself), rather than being set by statute, and therefore Section 108(b)

---

5. Even after the confirmation of a reorganization plan, a debtor may retain debtor in possession status for the purposes of Section 108(a) if the reorganization plan provides that some or all of the recovery from the suit brought by using Section 108(a)'s time exten- sion is subject to the supervision of the bankruptcy court and will accrue to the creditors, rather than the debtor. *See Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1460 (5th Cir. 1987).

rather than Section 108(a) applies to this case. Since Section 108(b) authorizes only a sixty-day extension beyond the order for relief, MHI's claim would be barred if Section 108(b) applied. *See* 11 U.S.C. § 108(b).[6]

National Fire's argument ignores the text of Section 108(a), which states that the section applies to "applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, *or an agreement*" that "fixes a period within which the debtor may commence an action." 11 U.S.C. § 108(a) (emphasis added). Thus, Section 108(a) unambiguously includes contractual limitations periods for filing suit, like the one found in this case, as well as statutory limitations periods.

The purpose of Section 108(a) is to extend the amount of time for a trustee or debtor in possession to file suit (regardless of the source of the limitations period), while the purpose of Section 108(b) is to extend other time limits such as filing a pleading, demand, notice, or insurance claim. *See* 11 U.S.C.A. § 108, Historical and Statutory Notes (1993). National Fire attempts to analogize the contractual limitations period in this case to a time limit for filing an insurance claim. Yet the Surety Bond itself states that it is a limit for instituting any legal or equitable proceeding "in any court of competent jurisdiction." Compl. Ex. A., ¶ 9. The Surety Bond establishes a time limit for "commenc[ing] an action" within the meaning of Section 108(a), 11 U.S.C. 108(a), rather

than for performing some other act like filing a insurance claim.

Since Section 108(a) applies to Chapter 11 debtors in possession, MHI was still a debtor in possession when this suit was filed, and Section 108(a) applies to contractual limitations periods like the one found in the Surety Bond, Section 108(a) applies to this case. Thus, MHI's claims are timely.

### C. Standing and Real Party in Interest

National Fire argues that even if the statute of limitations on MHI's claims has not expired, the motion to dismiss must be granted because MHI lacks standing to sue under Massachusetts law and is not the real party in interest entitled to bring the action under Federal Rule of Civil Procedure 17(a).[7]

MHI and the Maritime Administration signed the Security Agreement on December 17, 1997—the same day as the closing of the Fleet Bank loan. Def.'s Mem. ex. A. This proves to be a critical document in this dispute. The purpose of the Security Agreement was to protect the government's guarantee of the Fleet Bank loan by giving the government security interests in various MHI assets. Article Sixth, Section (m) of the Special Provisions to the Security Agreement ("Section (m)") is the crucial clause because it delineates the respective interests of MHI and the government in the rights existing under the Surety Bond.

---

6. Section 108(b) states:
 Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition,

the trustee may only file, cure, or perform ... before the later of (1) the end of such period ...; or (2) 60 days after the order for relief.
11 U.S.C. § 108(b).

7. Rule 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a).

Section (m) emphasizes that MHI and the Maritime Administration are "co-obligees" under the bond. Def.'s Mem. Ex. A, art. 6th, § (m). It notes, however, that MHI's "interest as a co-obligee . . . is and shall be, upon the occurrence and continuance of any default under any Construction Contract . . ., fully subject and subordinate to the rights and interests of the [Maritime Administration] therein as hereinafter set forth." *Id.* The section creates procedures for the distribution of Surety Bond payments, stating that

the [Maritime Administration] shall be the sole loss payee under the Surety Bonds and the Surety shall pay such amounts to the [Maritime Administration] directly for distribution to the co-obligees as their interests may appear. In the event of (i) a default under the Ahlborg Contract . . . and (ii) a Default under the Security Agreement, then the Surety Bonds proceeds shall be distributed by the [Maritime Administration] in accordance with the provisions of Section 6.05 of Exhibit 1. In the absence of a Security Agreement Default, the [Maritime Administration] shall determine whether to release the funds to [MHI] or to deposit the funds in an account controlled by the [Maritime Administration] . . . .

*Id.*

In its last few sentences, Section (m) deals with control over litigation and other legal matters:

In the event of any default under a Construction Contract, [MHI] shall have a right to be consulted in any negotiations, agreements, litigations or settlement of any rights related to the Surety Bonds, unless there also exists a Default

under the Security Agreement, in which case [MHI] shall not enjoy these rights. [MHI] hereby irrevocably appoints the [Maritime Administration], the true and lawful attorney of [MHI], in its name and stead, to execute all consents, approvals, settlements and agreements on behalf of [MHI] with respect to any rights related to the Surety Bonds.

*Id.*

National Fire contends that pursuant to Section (m) in the Security Agreement, MHI totally assigned all of its rights under the Surety Bond to the Maritime Administration. As a total assignor, MHI lacks standing to sue on the Surety Bond under state law and is not the real party in interest under the federal procedural rules.[8] MHI counters that it retains standing because Section (m) represented not a total assignment, but only a collateral assignment of some, but not all, of its rights under the Surety Bond. MHI also emphasizes the October 7, 1999 letter from the Maritime Administration to MHI, authorizing MHI to sue National Fire in its own name. While National Fire correctly states the rule that a total assignor of an interest lacks standing to sue on that interest under Massachusetts law, it errs in labeling Section (m) a total assignment when it actually represented a collateral assignment. A collateral assignor has standing to sue under Massachusetts law.

 In this case, the Rule 17(a) inquiry is indistinguishable from the standing analysis. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984) (noting that the question whether a party is a real party in interest is "generally" determined by looking at whether she has standing under

**8.** If MHI's claims were dismissed on the ground that it totally assigned its rights under the Surety Bond, MMBC's claims would also need to be dismissed. If MHI totally assigned its rights to the Maritime Administration, then it would have been impossible for MMBC subsequently to acquire the rights from MHI through foreclosure.

state law). The Surety Bond provides that Massachusetts law govern any dispute; thus, the standing inquiry is governed by Massachusetts law. A party has standing under Massachusetts law only if she has suffered an invasion of a legally protected interest. *See, e.g., Clymer v. Mayo,* 393 Mass. 754, 763, 473 N.E.2d 1084 (1985). A party is the real party in interest if, under the relevant substantive law creating the right being sued upon (also Massachusetts law in this diversity case), the suit has been commenced by the party holding the substantive right to relief. *E.g., Swanson,* 750 F.2d at 813–14; *Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 603–04 (5th Cir.1982); *Am. Nat. Bank and Trust Co. of Chicago v. Weyerhaeuser Co.,* 692 F.2d 455, 459–60 (7th Cir.1982); *Am. Triticale, Inc. v. Nytco Serv.'s, Inc.,* 664 F.2d 1136, 1141 (9th Cir.1981). Thus, the standing and real party in interest inquiries pose the same question: Does MHI, as an assignor of the Surety Bond, have a substantive right under Massachusetts law to enforce the terms of the bond?

▬ National Fire correctly states that under Massachusetts law, an individual who totally assigns an interest lacks standing to sue on that interest. *Provident Co-op. Bank v. James Talcott, Inc.,* 358 Mass. 180, 187–88, 260 N.E.2d 903 (1970) (holding that a mortgagee who had fully assigned a note and mortgage lacked standing to sue on that mortgage); *Genesco v. Koufman,* 11 Mass.App.Ct. 986, 989, 418 N.E.2d 625 (1981) (holding that a lessee who assigned "all of its right, title, and interest in all claims which it had" against assignee and lessor could not sue on those claims); *O'Connor Café, Inc. v. Liquor Liab. Joint Underwriting Ass'n,* NO. 991090A, 1999 WL 792199, *2–*3 (Mass.Super.Ct. Sept. 13, 1999) (Donohue, J.) (holding that an assignor who assigned "all of [his] rights, title, and interest in any

and every claim [he] had or may have had" against a certain third party lacked standing to sue on those claims, and also was not the real party in interest under Massachusetts Rule of Civil Procedure 17(a)). The question is whether MHI effected a total assignment.

### 1. Characterizing MHI's Assignment

▬ Section (m) represented only a collateral assignment for purposes of creating a security interest in the Maritime Administration, rather than a total assignment of all of MHI's rights under the Surety Bond. Under Massachusetts law, assignments are contracts and are interpreted according to ordinary rules of contract interpretation. *Larabee v. Potvin Lumber Co.,* 390 Mass. 636, 641, 459 N.E.2d 93 (1983). When the language of the contract is clear and unambiguous it must be construed in its "usual and ordinary sense." *E.g., Id.; Morse v. City of Boston,* 260 Mass. 255, 262, 157 N.E. 523 (1927). If the language is ambiguous, courts may consider the circumstances underlying the contract's making. *Id.; see also Boston Heating Co. v. Middleborough Sav. Bank,* 288 Mass. 433, 436–37, 193 N.E. 12 (1934) (considering the context of an assignment, including the assignee's normal method of business, in concluding that an ambiguous assignment could be seen as collateral rather than total).

Much of the language of Section (m), particularly the provisions dealing with the distribution of bond payments, indicates that it was intended to act as a collateral assignment. If Ahlborg defaulted under the Construction Contract but MHI did not default under the Security Agreement, then the Maritime Administration would act as sole loss payee of the bonds and could decide whether to pay MHI the bond money immediately or to hold it itself in

some sort of escrow account. The apparent goal was to ensure that MHI did not run off with the bond money, which would serve as collateral for the Maritime Administration's loan guarantee. If Ahlborg defaulted under the Construction Contract and MHI defaulted under the Security Agreement (by not paying back the Fleet Bank loan), then the Maritime Administration would take the amount of bond proceeds necessary to pay off the balance of the Fleet Bank loan and give the remainder of the money to MHI. Also, under the terms of Section (m), MHI would remain a co-obligee under the Surety Bond even after defaulting. The language thus suggests that the purpose of the assignment was not to act as a total transfer of rights from MHI to the Maritime Administration, but rather to provide collateral security for the Maritime Administration's loan guarantee.

The language of Section (m), however, is somewhat ambiguous. Some of the language in the section is sweeping, particularly the statements that MHI's rights are "fully subject and subordinate to" the Maritime Administration's rights upon the occurrence of any default, and that MHI "irrevocably appoints" the Maritime Administration as its sole attorney for all bond-related legal matters. Def.'s Mem. Ex. A, art. 6th, § m. As a practical matter, of course, the fact that MHI's rights are "subject and subordinate to" the Maritime Administration's right is, in and of itself, evidence that MHI retains some rights.

Ambiguity mandates consideration of the context in which Section (m) was written. Section (m) is part of a larger document, entitled "Security Agreement," that provides various forms of collateral (particularly MHI's physical assets at the Fore River Shipyard) as security for the federal government's guarantee of the Fleet Bank loan. This document was signed by MHI and the federal government on the same day as the closing of the Fleet Bank loan.

Based on similar contextual considerations, courts in other jurisdictions have held that assignments were collateral and not total in nature despite language that is at least as absolute as that found in Section (m). *E.g., Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 125 (2d Cir.1984) (holding that assignment of "all [assignor's] rights and interests in . . . [its] copper wheresoever situated" was collateral and not total under New York law because of the circumstances in which it was made); *United States v. Poling*, 73 F.Supp.2d 882, 893–94 (S.D.Ohio 1999) (holding that assignment of "all [the assignor's] right, title, and interest in" certain monthly income payments raised triable issue of fact as to whether it was collateral or total under Ohio law, given the context); *see In re Navigation Tech. Corp.*, 880 F.2d 1491, 1493 (1st Cir.1989) (noting that "absolute" language in assignment does not preclude it from being collateral and not total if the circumstances so indicate). The context surrounding Section (m) resolves any ambiguity that is found within its language and shows that MHI executed only a collateral, and not total, assignment of its bond rights.[9] Further, while MHI defaulted on the Fleet Bank loan and the Maritime Administration took possession of the Fore River shipyard, the Maritime Administration never took action to foreclose on MHI's rights under the Surety Bond. The Mari-

---

9. At the very least, the circumstances indicate that there is a triable issue of fact as to whether parol evidence indicates that MHI's assignment is collateral or total in nature. In a Federal Rule of Civil Procedure 12(b)(6) motion, all reasonable inferences must be drawn in the nonmovant's favor, and therefore the Court must assume that the assignment is collateral for purposes of the motion.

time Administration thus retains only a security interest in MHI's rights; it never acquired anything more.[10]

### 2. The Standing of Collateral Assignors

As Section (m) is a collateral assignment of MHI's rights under the bond rather than a full assignment of all its rights under the bond, the next question is whether an assignor of collateral rights retains enough of an interest in these rights to have standing to sue on them. The Massachusetts Supreme Judicial Court has confronted this issue and answered in the affirmative. The court stated in *Boston Heating Co. v. Middleborough Savings Bank,* 288 Mass. 433, 437, 193 N.E. 12 (1934), "[w]here a chose in action has been assigned as collateral security, the assignor may maintain an action in his own name . . . ." Furthermore, in *In re Navigation Tech. Corp.,* 880 F.2d at 1494, the First Circuit held that New Hampshire law gave collateral assignors standing to sue and based this conclusion on a section of Article 9 of the Uniform Commercial Code, which regulates security interests. The section, which treated the disposition of collateral after foreclosure by the collateral assignee, stated, "[i]f the security interest secures an indebtedness, the secured party must account to the debtor for any surplus [after disposing of collateral], and, unless otherwise agreed, the debtor is liable for any deficiency." N.H.Rev.Stat. Ann. § 382–A:9–504(2) (1994) (amended 2001). The collateral assignor thus had a right to any amount by which the assigned collateral exceeded the remaining debt that the collateral assignor owed to the collateral assignee. According to the court, this right gave the assignor sufficient interest in collateral to be capable of suing on it. Like New Hampshire, Massachusetts is a Uniform Commercial Code state, and thus it has the same provisions as New Hampshire. *See* Mass. Gen. Laws ch. 106, § 9–504(2) (1999) (amended 2001).[11] It is therefore logical to use the same interpretation as that used by the First Circuit.

Most other jurisdictions that have confronted this question have determined that an assignor for security or collateral purposes has standing to sue. *See, e.g., In re Navigation Tech. Corp.,* 880 F.2d at 1494 (applying New Hampshire law); *Aaron Ferer & Sons Ltd.,* 731 F.2d at 125 (applying New York law); *Meier v. Boatmen's Bank of Rolla,* 846 S.W.2d 254, 258 n. 4 (Mo.Ct.App.1993); *Greco v. Or. Mutual Fire Ins. Co.,* 191 Cal.App.2d 674, 12 Cal. Rptr. 802, 809–10 (1961); *Hoeppner Constr. Co. v. United States,* 287 F.2d 108, 110–11 (10th Cir.1960) (applying Colorado law), *Rosenberg v. Cohen,* 127 Me. 260, 143 A. 97, 97–98 (1928).[12] *But see Beneficial*

---

10. MHI would perhaps retain standing even if the Maritime Administration had foreclosed on its rights under the bond. Several of the policy reasons laid out below suggest that a collateral assignor should retain standing even after foreclosure on the collateral.

11. Article 9 of the Uniform Commercial Code was revised extensively both in New Hampshire and Massachusetts in 2001. The new version of the provision that is quoted here, however, is substantively identical to the old version, with only a slight change in wording. *See* Mass. Gen. Laws ch. 106, § 9–615(d) (Supp.2002). At any rate, the pre-revised

Code would apply to this case because all of its material transactions, including the 1997 Security Agreement, pre-date the 2001 Code revision. *See, e.g., Baystate Drywall, Inc. v. Chicopee Sav. Bank,* 385 Mass. 17, 19, 429 N.E.2d 1138 (1982).

12. Some states that allow collateral assignors of commercial notes to sue place certain restrictions on that right in the interest of protecting the obligor's interests in avoiding double liability and in preserving any defenses that she might have against the assignee. For example, California law requires consent to the suit by the assignee or joinder of the

*Commercial Corp. v. Railserv Mgmt. Corp.*, 563 F.Supp. 114, 116 (E.D.Pa.1983).

The policy reasons in favor of allowing a collateral assignor to sue are persuasive. In general, the assignor needs to be capable of suing in order to protect her rights by ensuring that the assigned cause of action is prosecuted vigorously. *See Aaron Ferer & Sons Ltd.*, 731 F.2d at 125. First, as long as the assignee has not foreclosed on the collateral, the assignor has an interest because she will regain full title to the assigned collateral in the future (without being subject to the assignee's security interest), as long as she pays off her debt. *See Boston Heating Co.*, 288 Mass. at 437, 193 N.E. 12. If she does recover full title to the collateral in the future, she wants to ensure that her recovered collateral is as valuable as possible.

Second, if, as here, the assigned collateral is a primary source of funds for the assignor to pay off the underlying debt owed to the assignee, the assignor's inability to enforce the assigned cause of action could force the assignor into default on the underlying debt. *Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc.*, 44 A.D.2d 887, 355 N.Y.S.2d 856, 858 (1974). MHI, for example, alleges that National Fire's refusal to pay the Surety Bond forced MHI to default on the Fleet Bank loan.

Third, even if the assignee does foreclose on the collateral, the assignor still has an interest in it: if the cause is not prosecuted vigorously and thus the collateral has little value, the assignee will collect little money from the collateral and the remaining debt of the assignor will be greater.

Fourth, the assignor has a direct interest, even after foreclosure, to the extent that the assigned collateral is worth more than the total debt owed to the assignee, because the assignor will receive this excess money back following the foreclosure sale. *See In re Navigation Tech. Corp.*, 880 F.2d at 1494.

Finally, one should note that the purpose of the real party in interest rule is to protect defendants from subsequent similar suits by one not a party to the initial suit, *Prevor–Mayorsohn Caribbean, Inc. v. P.R. Marine Mgmt., Inc.*, 620 F.2d 1, 4 (1st Cir.1980); this purpose is not adversely implicated by allowing MHI to sue. MHI has the consent of the only other potential plaintiff, the Maritime Administration, and at any rate the statute of limitations on the Maritime Administration's claim has already expired.

### 3. The 1999 Letter

Even after determining that the assignment is collateral in nature and that a collateral assignor has standing to sue on her assigned rights, one smaller issue remains: In Section (m), MHI appointed the Maritime Administration as its exclusive attorney to enforce the rights that it retained under the bond, perhaps depriving MHI of the ability to sue on its own to enforce those rights. According to the language of Section (m), MHI "irrevocably"[13] appointed the [Maritime Adminis-

---

assignee in order for the collateral assignor to have the right to sue. *Greco*, 12 Cal.Rptr. at 809–10; *see also Rosenberg*, 143 A. at 98 (noting that under Maine law, collateral assignor usually must have the consent of the assignee to sue unless the value of the assignment is greater than the amount of the underlying debt). Notably, MHI has the Maritime

Administration's consent to sue, and there is no threat of double liability because the statute of limitations on the Maritime Administration's claim has expired.

13. In context, "irrevocabl[e]" means that MHI cannot unilaterally withdraw its appointment of the Maritime Administration as

tration] as its attorney for "all" "consents, approvals, settlements, and agreements" of "rights related to the Surety Bonds," and gave up even the right to be consulted on "negotiations, agreements, litigations, or settlement" of these rights once it defaulted on the Security Agreement. Def.'s Mem. Ex. A., art. 6th, § (m). This appointment could conceivably be problematic for MHI's standing, were it not for the October 7, 1999, letter from the Maritime Administration to National Fire. That letter "authorized MHI ..., at such time as it deems appropriate, to bring legal action in its own name against ... National Fire ... to enforce the terms and conditions of the performance bond ...." Pl.'s Opp'n Ex. A. Even if the appointment clause in Section (m) assigned MHI's right to sue to the Maritime Administration, the 1999 letter effectively reassigned this right to MHI.

▉▉▉▉▉ There appears, however, to be no consideration for the reassignment. Assignments are usually treated like contracts under Massachusetts law, *Larabee v. Potvin Lumber Co.*, 390 Mass. 636, 641, 459 N.E.2d 93 (1983), and thus consideration is generally necessary for a valid assignment unless the assignment is seen as a delivered gift, *see Graustein v. Boston & Me. R.R.*, 304 Mass. 23, 26, 22 N.E.2d 594 (1939); *Cosmopolitan Trust Co. v. Leonard Watch Co.*, 249 Mass. 14, 19, 143 N.E. 827 (1924) (noting that assignment may be made by gift). It is unclear whether the consideration requirement also applies to reassignments. The letter is not a delivered gift because there was no delivery; the Maritime Administration sent the letter to National Fire, not MHI. In Massachusetts, however, a third party like National Fire cannot raise the absence

of consideration as a defense to a suit on the assigned cause of action. *Graustein*, 304 Mass. at 26, 22 N.E.2d 594; *see also* 6 Am.Jur.2d *Assignments* § 130 (1999) (noting that the Massachusetts rule is the general rule in American jurisdictions); *Barker v. Danner*, 903 S.W.2d 950, 955 (Mo. App.1995) (suggesting that the rationale for the rule is that the third party debtor is generally not prejudiced by a lack of consideration between assignor and assignee). Since consideration for the reassignment is irrelevant vis a vis National Fire, the reassignment is valid and affirms MHI's standing to bring suit on claims related to the Surety Bond.

## IV. CONCLUSION

The statute of limitations has not run on MHI's claim because Section 108(a) of the United States Bankruptcy Code applies to save MHI's action. The Court holds that a Chapter 11 debtor in possession, like MHI, can take advantage of Section 108(a)'s time extension. Further, MHI does have standing to sue and is the real party in interest under Federal Rule of Civil Procedure 17(a) because it made only a collateral, and not a total, assignment of its rights under the Surety Bond. Under Massachusetts law, a collateral assignor has standing to sue to enforce rights under the assigned collateral. Accordingly, National Fire's motion to dismiss the complaint [Docket No. 5] is DENIED.

SO ORDERED.

its attorney. It does not mean that the Maritime Administration is barred from reassign-

ing the right to sue to MHI.